**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SUMEC TEXTILE COMPANY LIMITED, | Bankruptcy Appeal |
| Appellant, | Civil Action No. 2:21-cv-06725-GRB |
| v. | |
| BRYAN RYNIKER, IN HIS CAPACITY AS LITIGATION ADMINISTRATOR OF THE POST-CONFIRMATION ESTATES OF DÉCOR HOLDINGS, INC., *et al.*, | |
| Appellee. | |

**OPENING BRIEF BY SUMEC TEXTILE COMPANY LIMITED IN SUPPORT OF APPEAL FROM ORDER OF BANKRUPTCY COURT DENYING MOTION BY SUMEC TEXTILE CO. LTD. TO REOPEN <u>ADVERSARY PROCEEDING AND VACATE ENTRY OF JUDGMENT</u>**

Dated:  January 31, 2022

**THE ROSNER LAW GROUP LLC**

Frederick B. Rosner
Zhao (Ruby) Liu
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

*Counsel to Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellant SUMEC Textile Company Limited respectfully submits as follows: Appellant is a governmental corporate party and therefore is not required to file a corporate disclosure statement.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ................... 1

STATEMENT OF JURISDICTION ......................................................... 9

STANDARD OF REVIEW ................................................................. 10

STATEMENT OF ISSUES ................................................................. 11

STATEMENT OF THE CASE .............................................................. 13

ARGUMENT .................................................................................. 26

    I.     The Bankruptcy Court's Conclusion that SUMEC Prepared the Proof of Claim and listed Don Leviton as its "agent" on the Proof of Claim Form is Clearly Erroneous.  It is Factually Incorrect and Contradicted by SUMEC's Sworn Testimony. ............. 26

    II.    The Bankruptcy Court Incorrectly Shifted the Burden of Proof to Establish Valid Service from Appellee to SUMEC ........................ 28

        A.     SUMEC Met its Initial Burden of Challenging Appellee's Purported Service ..................................................... 29

        B.     Appellee Chose Not to Serve SUMEC By the Book and Should Not be Rewarded for Not Following the Rules. ........... 31

        C.     Appellee's Mistaken and Unreasonable Belief that B&J was a Law Firm Representing SUMEC was Negligence, not a Valid Excuse for Defective Service. ................................ 31

    III.    The Bankruptcy Court Erred as a Matter of Law in Ruling that Service of a Summons & Complaint at the Address Set Forth in the Proof of Claim is Proper. ................................................. 32

    IV.    The Bankruptcy Court Abused its Discretion By Considering and Relying Upon for the Truth of the Matter Asserted Statements in Emails Attached to Appellee's Objection that are Hearsay, and Gave Less or No Weight to Sworn Statements Submitted by SUMEC that Contradicted the Hearsay. ....................... 36

V.      The Bankruptcy Court Erred in Finding that B&J was
        SUMEC's Sub-Agent Purpose of Accepting Service of Process,
        as a Matter of Fact and Law. ................................................................37

VI.     The Bankruptcy Court's Finding that B&J was "an agent
        authorized by appointment . . . to receive service of process [on
        behalf of SUMEC]" as required by Bankruptcy Rule 7004(b)(3)
        is Erroneous. ..........................................................................................41

        A.      B&J/Mr. Leviton Lacked Actual Authority to Act on
                Behalf of SUMEC. ....................................................................41

        B.      B&J Lacked Apparent Authority to Act on Behalf of
                SUMEC. .....................................................................................42

VII.    The Bankruptcy Court Erred in Failing to Consider SUMEC's
        Request for Relief under Rule 55(c) ......................................................47

        A.      SUMEC did not Default Because it was Never Served............48

        B.      SUMEC has Meritorious Defenses. ...........................................49

        C.      Appellee Will Not be Prejudiced if the Default Judgment
                is Vacated. .................................................................................50

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Abbott v. Perez*, 138 S. Ct. 2305 (2018)...................................................................11

*American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996)......... 48, 49

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U. S. 485 (1984) .......11

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005)......................................10

*Carroll v. United States Equities Corp.*, No. 1:18-CV-667 (TJM/CFH), 2019 U.S.
    Dist. LEXIS 162631 (N.D.N.Y. Sep. 24, 2019) .....................................................3

*Castro v. Cusack,* No. 15 CV 6714 (ENV) (LB), 2019 U.S. Dist. LEXIS 27124
    (E.D.N.Y. Feb. 19, 2019) ................................................................................. 29, 30

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983).........................................................50

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993)................................. 48, 49

*Fashion Tv Llc v. Telekom Aus. Aktiengesellschaft*, No. 17-cv-8350 (KBF), 2018
    U.S. Dist. LEXIS 244304 (S.D.N.Y. Mar. 9, 2018) .............................................43

*Fennel v. TLB Kent Co.*, 865 F.2d 498 (2d Cir. 1989) .............................................43

*Fifth Third Bank v. Mytelka,* No. 05-mc-52 (DLI), 2008 U.S. Dist. LEXIS 63435
    (E.D.N.Y. Aug. 16, 2008) ...................................................................................29

*First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d
    189 (2d Cir. 1989)........................................................................... 43, 45, 46, 47

*Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989 (2d Cir. 1991) ......................46

*In re Charter Commc'ns, Inc.*, 691 F.3d 476 (2d Cir. 2012)....................................11

*In re Sunde*, No. 07-10151, 2007 Bankr. LEXIS 3704 (Bankr. W.D. Wis. Oct. 2,
    2007)........................................................................................................................34

*Karavos Compania Naviera S. A. v. Atlantica Exp. Corp.*, 588 F.2d 1 (2d Cir. 1978)
    ................................................................................................................................42

*Kravitz v. Deacons (In re Advance Watch Co.)*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018) ................................................................................................31

*Maclaren Eur. Ltd. v. Ace Am. Ins. Co.,* 908 F. Supp. 2d 417 (S.D.N.Y. 2012) ......40

*Ms. Interpret v. Rawe Druck-und-Verelungs-GmbH (In re Ms. Interpret),* 222 B.R. 409 (Bankr. S.D.N.Y. 1998) ................................................................34

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) ..............................................49

*Roberts v. Keith*, 2007 U.S. Dist. LEXIS 68811 (S.D.N.Y. Sep. 18, 2007) ............50

*Shipley v. Abrams (In re C.P. Hall Co.),* 513 B.R. 546 (Bankr. N.D. Ill. 2014) ......34

*Star Funding, Inc. v. Tire Ctrs.*, LLC, 717 F. App'x 38 (2d Cir. 2017) ...................42

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............3

*Takeout, Inc. v. Favour Century Ltd. (In re Takeout, Inc.)*, Adv. Pro. No. 07-01666 (BRL), 2009 Bankr. LEXIS 735 (Bankr. S.D.N.Y. Mar. 17, 2009) ....................34

*TCI Group Life Insurance Plan v. Knoeber*, 244 F.3d 691 (9th Cir. 2000) .............51

*Unisys Corp. v. Pergament Distribs., Inc.*, No. 86-CV-4304 (ERK), 1991 U.S. Dist. LEXIS 2427 (E.D.N.Y. Feb. 11, 1991) ................................................45

*United States v. Hill*, 658 F. App'x 600 (2d Cir. 2016) ......................................11

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) ..................................11

**STATUTES**

11 U.S.C § 105 ................................................................................................10

11 U.S.C. § 547 ..............................................................................................10

11 U.S.C. § 548 ..............................................................................................10

28 U.S.C. § 157(a) ...........................................................................................9

28 U.S.C. § 158(a)(1) ............................................................................... 10, 26

**RULES**

Fed. R. Bankr. P. 7004 ...................................................................................33

Fed. R. Bankr. P. 7004(b)(3) ............................................................ passim

Fed. R. Bankr. P. 7055(c) .................................................... 11, 24, 26

Fed. R. Bankr. P. 8002(a)(1) ........................................................ 10

Fed. R. Bankr. P. 8003(a) ........................................................... 26

Fed. R. Bankr. P. 9024 ........................................................ 23, 26

Fed. R. Civ. P. 4(f)(3) .............................................................. 31

Fed. R. Civ. P. 55(c) ......................................................... passim

Fed. R. Civ. P. 60(b) ......................................................... 23, 25

Fed. R. Civ. P. 60(b)(4) ............................................................ 10

Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.3; Comment [3] ........ 47

SUMEC Textile Company Limited ("SUMEC"), by and through its undersigned counsel, submits this Opening Brief in support of its appeal from the *Order Denying Motion of Defendant SUMEC Textile Co. Ltd. to Reopen Adversary Proceeding and Vacate Entry of Judgment* [Adv. D.I. 27][1] (the "Order")] and the supporting *Supplemental Findings of Fact and Conclusion* [Adv. D.I. 28] (the "Opinion") entered November 22, 2021 (A1068)[2] by the United States Bankruptcy Court for the Eastern District of New York, Hon. Robert E. Grossman (the "Bankruptcy Court").

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

This Appeal seeks to vacate and void a default judgment in the amount of $693,048.84 (the "Default Judgment") entered by the Bankruptcy Court against SUMEC.  Brian Ryniker, as Litigation Administrator (the "Appellee" or "Plaintiff") of the Post-Confirmation Estates of the above-captioned debtors (the "Debtors"), never served SUMEC with the Summons and Complaint[3] and SUMEC did not otherwise receive notice of the lawsuit before entry of the Default Judgment.

---

[1] Citations to docket entries in the underlying Adversary Proceeding (Case No. 8-20-08130-REG) shall take the form [Adv. D.I. ___].

[2] All exhibits are contained in an Appendix filed separately herewith.  Citations to the Appendix throughout this brief shall take the form (A____).

[3] The underlying action is a "preference" action.  Appellee seeks to clawback payments made for goods sold and delivered by SUMEC.

Appellee violated SUMEC's right to Due Process, and denied SUMEC the opportunity to be heard and present its meritorious defenses.  Because Appellee failed to effect service, the Bankruptcy Court never obtained personal jurisdiction over SUMEC and the Default Judgment is void *ab initio*.

The Default Judgment should be vacated because Appellee's counsel failed to act in a manner reasonably calculated to serve or even apprise SUMEC of the lawsuit.  SUMEC is a foreign corporation based in and organized under the laws of the People's Republic of China.  Although SUMEC has no headquarters, directors, officers, principal place of business or registered agent in the United States, it never hid from or tried to evade service.  In fact, it maintains a very visible public presence in China and elsewhere.[4]  SUMEC is a textile manufacturer that sold goods to the Debtors for over ten years.  There is no dispute that Appellee's counsel[5] could have served SUMEC in accordance with the Hague Convention.  SUMEC's correct service address[6] is listed on every invoice it sent the Debtors.  The Debtors also listed

_____

[4] SUMEC is part of a Chinese conglomerate that ranks among the top 500 global companies with over 18,000 employees and 35 industrial factories and a key state-owned enterprise directly managed by the central government of China.  SUMEC's annual sales alone (not including any of its affiliates) aggregate approximately $460 million and it has more than 200 customers worldwide.

[5] Appellee's counsel maintains an office for the practice of law in Beijing, China.

[6] No 69 Aoti St, Jianye District, Nanjing, 210029, China.

SUMEC's valid service address and three email addresses for contact persons at SUMEC in their list of largest creditors when they filed their bankruptcy petitions. (A0780). But Appellee's counsel made no attempt to serve or even provide notice to SUMEC at these physical and email addresses.

The prescribed "by the book" method of service on a company based in China is compliance with the Hague Convention. Appellee never attempted to do so. Nor did Appellee mail or email the Summons and Complaint to SUMEC. Appellee never sought to serve SUMEC in a manner reasonably calculated to provide notice of the lawsuit to SUMEC or direct legal process to the attention of an appropriate decision maker. Appellee's counsel, instead, secured an unjust Default Judgment by engaging in "sewer service."[7]

Appellee sent the Summons and Complaint to Don Leviton. Appellee incorrectly denominated Mr. Leviton as SUMEC's "attorneys" in the Declaration of Service (the "COS"). (A0016). This is false. Mr. Leviton is *not* counsel to

---

[7] "Sewer service" is "the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service. *See, e.g., Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010) (When the [defendants] failed to appear in court because they did not have notice of the lawsuits, [plaintiff] obtained default judgments against them."); *Carroll v. United States Equities Corp.*, No. 1:18-CV-667 (TJM/CFH), 2019 U.S. Dist. LEXIS 162631, at *19-21 (N.D.N.Y. Sep. 24, 2019) ("[T]he practice of obtaining a default judgment by filing false affidavits of service [is]colloquially referred to as 'sewer service.'") (internal citations omitted).

SUMEC.[8]  Mr. Leviton also never advised Appellee's counsel in writing that he had authority to accept service on behalf of SUMEC.

"Sewer service" involves defective service and a false COS coupled with a false affidavit seeking entry of default.  Here, both elements are present.  Appellee's counsel, in his Declaration of Service for Appellee's Request for Entry of Default, represented to the Bankruptcy Court: "[o]n February 24, 2021, I caused a true and correct copy of the Default Papers to be served via electronic email **upon Peter Geldes, counsel to Sumec** (PGeldes@brownandjoseph.com)."  (A0025) (**emphasis** added).  This too is false.  Mr. Geldes is *not* an attorney.  In fact, before Appellee's counsel secured the Default Judgement, Peter Geldes ("Mr. Geldes") wrote to Appellee's counsel[9] confirming that B&J is not a law firm,[10] is not SUMEC's attorney of record and had no authority to accept service for SUMEC.  (A0303, A0313).

---

[8] Mr. Leviton is general counsel to Brown & Joseph, LLC ("B&J"), a Detroit-based debt collection agency.

[9] Upon receipt of Mr. Geldes' email, Appellee's counsel definitively *knew* his purported service on B&J on behalf of SUMEC was defective.  Appellee's counsel took no corrective action, ignored the import of that email, concealed it from the Bankruptcy Court and pressed on to secure the Default Judgment by falsely certifying that SUMEC has confirmed receipt of service.

[10] The fact that B&J is not a law firm is readily established by an email exchange or phone call with Mr. Geldes at B&J, a glance at the website B&J maintains or even just by reading the signature block on emails from B&J (A1046).

B&J's written disclaimer to Appellee's counsel that B&J could not accept service for SUMEC was material and directly relevant to the Bankruptcy Court's consideration whether effective service was made against SUMEC and entry of the Default Judgment was proper.  This is so because service is a factual inquiry. Appellee's counsel, however, concealed B&J's written disclaimer from the Bankruptcy Court.  In his sworn certification in support of the Motion for Entry of Default Judgment, notwithstanding his duty of candor with the Court, Appellee's counsel failed to disclose B&J's written disclaimer to the Bankruptcy Court.  To the contrary, Appellee's counsel's sworn certification *affirmatively represents* that *SUMEC* confirmed receipt of service.  (A0033).  Appellee's counsel again concealed B&J's disclaimer at the hearing on the Motion for Entry of Default Judgment. (A1091).

Prior to entry of the Default Judgment (A0080-0081), Appellee's counsel never: (a) interacted with a decision maker *at SUMEC* or (b) confirmed receipt of the Summons and Complaint *with anyone at SUMEC*.  The nefarious way the Default Judgment was procured by Appellee's counsel included a fraudulent COS, and fraudulent representations and omissions to secure the Default Judgment.

In September 2021, when the undersigned was retained as counsel to SUMEC, the undersigned brought these facts challenging service to the attention of Appellee's counsel.  In response, Appellee's counsel continued the charade stating:

> "Thanks for your message, as it gave me a very good laugh.   I will not bother responding to each of the comically wrong and untrue assertions, because it would take me all day and even if all of them were correct, which they are not, you would still lose . . . .   [H]aving appeared before Judge Grossman numerous times over his entire term and having practiced with him for nearly 20 years before that, **I look forward to your making the argument that service on B&J is not valid because they are not a law firm is great, considering that the email address on this is 'Lawyer@brownandjoseph.com.'**"[11]

(A0312) (**emphasis** added).

The Bankruptcy Court denied SUMEC a full and fair opportunity to seek *vacatur* of the Default Judgment.   The Bankruptcy Court expressly prohibited SUMEC from taking discovery to develop a factual record including taking the depositions of Appellee's counsel, Mr. Geldes and Mr. Leviton.   (A1114).   The Bankruptcy Court did not conduct an evidentiary nor did it admit or exclude evidence based on the Federal Rules of Evidence.   The Bankruptcy Court erroneously accepted hearsay statements in emails attached to Appellee's Objection for the truth of the matter asserted.   (A1071-1072).   These out of court declarants did not testify and SUMEC was given no opportunity to cross examine them to challenge the veracity of their statements.   The Bankruptcy Court gave little or no weight to the sworn statements of SUMEC (A0073) and its counsel (A0774) that factually

---

[11] The email referenced by Appellee's counsel is not the same email address that Appellee served on Mr. Leviton.

contradicted the hearsay statements.  The Bankruptcy Court made no effort to reconcile factual discrepancies between SUMEC's sworn statements and the hearsay statements relied on by Appellee.  The Bankruptcy Court also did not rule on SUMEC's request for relief under Rule 55(c) of the Federal Rules of Civil Procedure.  (A1132).

In denying SUMEC's Motion to Vacate the Default Judgment, the Bankruptcy Court relied heavily on a proof of claim form (the "Proof of Claim") signed and filed by Mr. Leviton and certain hearsay statements contained in emails sent by Mr. Geldes at B&J.  The Bankruptcy Court concluded that the Proof of Claim was filed *by SUMEC* and the claim was *for SUMEC*.  This is clearly erroneously.

SUMEC had trade credit insurance with China Export & Credit Insurance Corporation, also known as SINOSURE ("SINOSURE"), a Chinese state-owned insurer.  SUMEC's trade debt claim against the Debtors was paid through insurance by SINOSURE.  In connection with paying SUMEC, SINOSURE, as insurer, became subrogated to SUMEC's entire claim against the Debtors.  Toward that end, SUMEC assigned and transferred its entire claim to SINOSURE.  SINOSURE, in turn, hired B&J to file a proof of claim in the Debtors' bankruptcy cases *for SINOSURE*, as subrogee.  B&J's limited authority in the Debtors' bankruptcy cases is set forth in the *Trust Deed and Letter of Instruction*, which was attached to the Proof of Claim filed by Mr. Leviton.  Pursuant to that agreement, B&J was

authorized *by SINOSURE* (not SUMEC) to file a proof of claim in SINOSURE's or B&J's name, <u>not</u> in SUMEC's name.  (A0109).  Having received payment on its insurance claim, SUMEC itself never filed a proof of claim.  (A0076).

Mr. Leviton, acting unilaterally and without SUMEC's knowledge or approval, signed a Proof of Claim *in SUMEC's name* and checked a box on the Proof of Claim form that identifies him as "the creditor's attorney or authorized agent." (A0103).  But Mr. Leviton was never SUMEC's attorney nor was he SUMEC's authorized agent.  In fact, SUMEC had no idea who Mr. Leviton or B&J were until *after* entry of the Default Judgment.  The *Trust Deed and Letter of Instruction,* prepared and signed by SINOSURE, only authorizes B&J to file a proof of claim in SINOSURE's or B&J's name, *not* in the name of SUMEC.  (A0109).

The Bankruptcy Court misconstrued the business relationship between the parties.  The Bankruptcy Court found, "Sinosure then appointed Brown & Joseph as its subagent to perform the functions that Sumec conferred upon Sinosure". (A1077).  This finding is clearly erroneous and illogical.  The Bankruptcy Court incorrectly presumed SUMEC filed the Proof of Claim or B&J filed it *for SUMEC*. SUMEC did not file a proof of claim and submitted a sworn declaration to that effect. (A0078).  SUMEC was paid on its insurance claim and had no reason to involve itself in the Debtors' bankruptcy cases.  *Id*.  Nor did it have need to confer *any* functions on SINOSURE/B&J.  SUMEC had no reason to—and did not—appoint

either SINOSURE, as its agent, or authorize SINOSURE to hire B&J, as its subagent, in the Debtors' bankruptcy cases.  The Bankruptcy Court's "finding" of sub-agency is not supported by the factual record and is illogical.  Pursuant to the Trust Deed and Letter of Instruction, SINOSURE only authorized B&J to collect the underlying debt in SINOSURE's or B&J's name, <u>not</u> in SUMEC's name.  (A0109). SUMEC was neither in privity nor contact with B&J.

The entry of the Default Judgment is particularly disturbing because the Bankruptcy Court found SUMEC liable for nearly $700,000 for a complaint SUMEC never was served with based on a proof of claim it did not see, sign or file. Appellee's counsel conducted no due diligence in connection with concluding that service on Mr. Leviton or Mr. Geldes, both purportedly (but incorrectly) as counsel to SUMEC, comported with Due Process.  Even worse, Appellee's counsel secured the Default Judgment by concealing material facts from the Bankruptcy Court.

The circumstances surrounding entry of the Default Judgment violate any notions of justice, Due Process and fair play.  In fact, they suggest foul play.  The Opinion of the Bankruptcy Court should be reversed and the Default Judgment vacated as void *ab initio*.

<u>**STATEMENT OF JURISDICTION**</u>

The Bankruptcy Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 157(a) to issue its Order denying SUMEC's motion to vacate a default

judgment entered against SUMEC in an avoidance action arising under sections 105, 547, 548, and 550 of title 11 of the United States Code.

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a)(1), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges."

The Bankruptcy Court entered its Order on November 23, 2021. SUMEC filed its Notice of Appeal on December 2, 2021, which is timely under Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure.

This Appeal is from a final judgment on the Motion to Vacate.

## STANDARD OF REVIEW

Denial of a Rule 60(b)(4) motion is reviewed *de novo*. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (internal citations omitted) ("Whereas we generally review motions pursuant to the provisions of Rule 60(b) for abuse of discretion, we review *de novo* a district court's denial of a Rule 60(b)(4) motion.") "Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Id.*

District courts review a bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. *See In re Charter Commc'ns, Inc.*, 691 F.3d 476, 483

(2d Cir. 2012).  "[W]hether the court applied the correct burden of proof is a question of law subject to plenary review[.]"  *Abbott v. Perez*, 138 S. Ct. 2305, 2326 (2018) (internal citations omitted).  "And when a finding of fact is based on the application of an incorrect burden of proof, the finding cannot stand."  *Id.*; *see also Bose Corp. v. Consumers Union of United States, Inc.*, 466 U. S. 485, 501 (1984) ("An appellate cour[t has] power to correct errors of law, including those that . . . infect . . . a finding of fact that is predicated on a misunderstanding of the governing rule of law").

Discovery rulings are reviewed for abuse of discretion.  *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).  Evidentiary ruling are also reviewed for abuse of discretion and are reversible if the court "acted arbitrarily or irrationally." *United States v. Hill*, 658 F. App'x 600, 603 (2d Cir. 2016).

## **STATEMENT OF ISSUES**

1.     Whether, in denying the Motion to Vacate, the Bankruptcy Court erred by failing to consider SUMEC's request for relief under Rule 55(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy 7055(c) of the Federal Rules of Bankruptcy Procedure?

2.     Whether, in denying the Motion to Vacate, the Bankruptcy Court erred in not requiring Plaintiff-Appellee to meet its burden of proof that due and valid service of legal process was made upon SUMEC in accordance with Due Process and Rule 7004(b)(3) of the Fed. R. Bankr. P. but, instead, requiring SUMEC to disprove valid service?

3.     Whether, in denying the Motion to Vacate, the Bankruptcy Court erred by failing to allow discovery, conduct an evidentiary hearing, consider objections to the introduction of evidence based on hearsay and permit cross examination of statements made by out of court declarants?

4.     Whether, in denying the Motion to Vacate, the Bankruptcy Court erred

by giving great weight and credibility to hearsay statements submitted by Plaintiff-Appellee over the sworn declarations submitted by SUMEC?

5.     Whether the Bankruptcy Court erred in holding that "[t]he law is clear that listing an agent in a creditor's proof of claim means that the agent is 'explicitly appointed . . . as [the creditor's] authorized agent for service of process' under Bankruptcy Rule 7004(b)(3) and that service of process on that agent at the address listed in the proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3)"?

6.     Whether the Bankruptcy Court erred in finding that Brown & Joseph LLC ("B&J") was filing a proof of claim *for SUMEC* when (i) SUMEC, in fact, did not file a proof of claim, (ii) assigned its debt collection right to SINOSURE (as subogee), (iii) never instructed or authorized B&J to file a proof of claim on its behalf and (iv) B&J was hired by SINOSURE (not SUMEC) to collect a debt only in SINOSURE's or B&J's (not SUMEC's) name?

7.     Whether the Bankruptcy Court erred in finding that Plaintiff-Appellee "properly relied on the address listed in the proof of claim for service of the summons and complaint," when that address was not a valid address for SUMEC and Plaintiff-Appellee ignored the exhibits to the proof of claim that clearly set forth B&J's limited scope of authority?

8.     Whether the Bankruptcy Court erred in finding that B&J was an "agent authorized by appointment . . . to accept service of process" within the meaning of Federal Rules of Bankruptcy Procedure Rule 7004(b)(3)?

9.     Whether the Bankruptcy Court erred in finding that B&J had any authority, actual or apparent, to accept service of process on behalf of SUMEC?

10.     Whether the Bankruptcy Court erred in incorrectly expanding B&J's limited authority to collect a debt for SINOSURE into finding that B&J had the requisite authority to accept service of process for SUMEC?

11.     Whether the Bankruptcy Court erred in finding that B&J had authority to accept service of process on behalf of SUMEC when (i) SUMEC was not in privity of contract with B&J, (ii) B&J never spoke with or ever received any instruction from SUMEC, and (iii) the document that set forth B&J's limited scope of authority—the *Trust Deed and Letter of Instruction* from SINOSURE (not SUMEC)—provided that B&J is authorized only to collect a debt in either SINOSURE's or B&J's name, not SUMEC's name?

12.    Whether the Bankruptcy Court erred in finding that SINOSURE had authority to appoint B&J as SUMEC's subagent when (i) there were no functions for B&J to perform for or on behalf of SUMEC in the bankruptcy case, (ii) SUMEC never authorized SINOSURE to appoint a subagent on its behalf because SUMEC had determined not to file a proof of claim, and (iii) SINOSURE never agreed to be responsible to SUMEC for B&J's conduct in the bankruptcy case?

13.    Whether the Bankruptcy Court erred in finding that SINOSURE appointed B&J as SUMEC's subagent (as opposed to SINOSURE's own agent) when, pursuant to the Trust Deed and Letter of Instruction, SINOSURE only authorized B&J to collect the debt in either SINOSURE's or B&J's name, not SUMEC's name?

14.    Whether the Bankruptcy Court erred in finding that B&J was a subagent to SUMEC when (i) SUMEC had no control over the manner B&J conducted itself and (ii) B&J reported solely to and received instructions solely from SINOSURE (not SUMEC)?

15.    Whether the Bankruptcy Court erred in finding that B&J had apparent authority to accept service of process on SUMEC's behalf when: (i) there was no traceable (or any) conduct on part of the alleged principal (SUMEC) that was communicated to the third party (the Plaintiff-Appellee) that misled the Plaintiff-Appellee to believe that the alleged agent (B&J) had authority to act on SUMEC's behalf and (ii) the Plaintiff-Appellee's reliance on the agent's (B&J's) representations were unreasonable?

16.    Whether the Bankruptcy Court erred in finding that B&J had "authority to file the proof of claim in SUMEC's name" when the Trust Deed and Letter of Instruction only authorized B&J to collect the debt in SINOSURE's or B&J's name?

17.    Whether the Bankruptcy Court erred in finding that the purported service on B&J "satisfied due process requirement"?

## **STATEMENT OF THE CASE**

**SUMEC was a Long-time Supplier of Textiles to the Debtors and a Supporter of Their Reorganization Effort**.

SUMEC is a Chinese manufacturer of textiles that conducted business with the Debtors for over ten (10) years.  (A0075).  It was supportive of the Debtors'

reorganization effort and continued to ship goods during the preference period and post-petition. *Id.*

**SUMEC Purchased Trade Credit Insurance from SINOSURE**.

To mitigate its risk in selling goods to the Debtors, SUMEC purchased trade credit insurance issued by SINOSURE, a Chinese state-owned insurer. *Id.* When the Debtors did not pay amounts owed, SUMEC, as policy holder, submitted an insurance claim to SINOSURE. *Id.* SINOSURE acknowledged the claim and paid SUMEC. (A0075-0076).

**SUMEC Assigned its Entire Claim to SINOSURE and SINOSURE was Contractually Subrogated to SUMEC's Claims against the Debtors.**

In connection with receiving a payment on SUMEC' insurance claim, SUMEC assigned its entire claim against the Debtors to SINOSURE. (A0076). That was accomplished through two agreements; the *Collection Trust Deed* and a subrogation agreement. The *Collection Trust Deed* provides:

> Owing to and in connection with the protracted default by [the Debtors] in payment under the Sales Contract or [certain enumerated invoices] signed between [SUMEC] and [the Debtors], we, [SUMEC], hereby confirm our agreement and authorization to [SINOSURE], of the full rights for collection, on our behalf, against [the Debtors] . . . .

> We further confirm our grant to [SINOSURE] the full power in exercising such rights and remedies in our [SUMEC's] or its [SINOSURE's] own name and give any assistance as it may require of us from time to time.

(A0106).  The *Collection Trust Deed* does not authorize SINOSURE (or appoint a sub-agent on SUMEC's behalf) to act as SUMEC's lawyer, accept service of process from Appellee on SUMEC's behalf or act in any way act for SUMEC.  The aptly named *Collection Trust Deed* only allows SINOSURE, as subrogee, to collect the debt that SUMEC was owed.  *Id*.  The *Collection Trust Deed* is attached to the Proof of Claim.  *Id.*

SUMEC and SINOSURE also executed a subrogation agreement, pursuant to which SUMEC agreed to "**assign, transfer and subrogate to [SINOSURE], to the extent of [SINOSURE's] interest, all [SUMEC's] rights and remedies in and in respect of the subject matter insured**."  (A0094) (**emphasis** added).  Following SUMEC's assignment of its claim against the Debtors to SINOSURE, as subrogee, SUMEC no longer was involved with the Debtors' bankruptcy cases, and did not submit a proof of claim.  (A0078).  SUMEC did not retain counsel in the Debtors' bankruptcy cases, did not file an entry of appearance or any other pleadings, and elected not to participate through or sit on the Official Committee of Unsecured Creditors despite solicitation from the U.S. Trustee's Office.

**SINOSURE Hired B&J to Collect the Debt**.

To assist in SINOSURE in exercising its rights as subrogee and assignee of SUMEC's claim, SINOSURE hired debt collection agency B&J.  (A0077).  B&J, however, was only authorized to collect the debt in either SINOSURE's or B&J's

name, *not in SUMEC's name.  Id*.  B&J was not authorized to accept service of process for or act in any way for SUMEC.  (A0078).  The scope of B&J's authority and services is set forth and limited by the *Trust Deed and Letter of Instruction* from SINOSURE to B&J which provides:

> "We [SINOSURE] hereby confirm our instruction to Brown & Joseph, LLC for **debt collection against [the Debtors]** who has defaulted in payment to our client [SUMEC] under [certain enumerated invoice(s)], signed between [the Debtors] (the defaulter) and [SUMEC] (our client).
>
> . . .
>
> We [SINOSURE] further confirm to grant Brown & Joseph, LLC the full power in exercising such rights and remedies **in our [SINOSURE's] or its own name** for the amicable debt collection and commit ourselves to render any assistance as it may reasonably require of us from time to time.

(A0098-0099) (**emphasis** added).  The *Trust Deed and Letter of Instruction* did not give B&J authority to fill out the Proof of Claim in SUMEC's name.  *Id.*  The *Trust Deed and Letter of Instruction* is attached to the Proof of Claim.  (A0108-0109).

**Don Leviton, Legal Counsel to B&J, Filed a Proof of Claim in *SUMEC's* Name for the Benefit of SINOSURE.**

Mr. Leviton, legal counsel to B&J, prepared and signed a Proof of Claim in SUMEC's name.  (A0101-0103).  Mr. Leviton never received instruction from, communicated with or reported to anyone at SUMEC.  (A0079).  He had no authority to act on behalf of SUMEC when he signed the Proof of Claim.  (A0078, A0109,

A0777.)  SUMEC did not sign, or have any involvement with preparing, authorizing or filing the Proof of Claim.  (A0078).  SUMEC never saw the Proof of Claim before it was filed and never was asked to sign or review the Proof of Claim.  *Id.*  As such, SUMEC had no responsibility—and should not have any liability now—for what boxes on the proof of claim form Mr. Leviton checked, or how B&J thereafter interacted with Appellee.

Mr. Leviton—without authority—identified SUMEC as the creditor and indicated that notices concerning the claim should be sent to: "Brown & Joseph, c/o Don Leviton, PO Box, 59638, Schaumburg, IL 60159."  (A0101).  Again, without authority, Mr. Leviton selected the box on the proof of claim form that states "I am the creditor's attorney or authorized agent."  (A0103).  But Mr. Leviton signed the Proof of Claim as Legal Counsel to B&J, not Legal Counsel to SUMEC, so he clearly is not SUMEC's attorney.  *Id.*

There is no document attached to the Proof of Claim that appoints B&J as agent or subagent for SUMEC.  That would makes no sense either, because SUMEC did not need an agent, and did not file a proof of claim.  (A0078).  The attachments to the Proof of Claim provide that Mr. Leviton was acting as authorized agent *for SINOSURE*, as subrogee to SUMEC's claim.  SINOSURE did not even grant B&J authority to file the Proof of Claim in SUMEC's name.  (A0099).

Reviewing the Proof of Claim *with exhibits*, B&J had limited authority to act solely on behalf of SINOSURE.  SUMEC and B&J are not in privity.  SUMEC authorized SINOSURE to collect the debt (A0106), and assigned the right to collect the debt to SINOSURE, as subrogee (A0094).  SINOSURE hired B&J.  (A0108-0109).  B&J was acting for SINOSURE and for the limited purpose of collecting the debt for SINOSURE, as subrogee. *Id.*  SUMEC received an insurance payment from SINOSURE, so it did not file a proof of claim.  (A0075-0076).  B&J was filing for SINOSURE as subrogee and assignee to SUMEC's claim.  (A0079).

**Appellee Mistakenly Believed that B&J was a Law Firm Representing SUMEC, and Served all Pleadings on Don Leviton/B&J Instead of SUMEC on that Incorrect and Unreasonable Belief.**

Appellee served the Summons & Complaint, the default papers and related hearing notices on B&J and/or Mr. Leviton, *not* SUMEC.  (A0079-0081).  Appellee mistakenly believed that B&J is a law firm and counsel to SUMEC, which is evident from the multiple false declarations of service filed by Appellee.  *See* Appellee's Declaration of Service regarding the Complaint and Summons: "I served a true and correct copy of the [Summons] and [Complaint] to the Defendant **and its attorneys** as follows:

- on August 28, 2020, upon Sumec Textile Company Ltd., c/o Brown Joseph, Attn: Don Leviton, P.O. Box 59838, Schaumburg, Illinois, 60159, by United States Postal Service First Class Mail, postage prepaid;

- and on August 31, 2020, by electronic mail upon Don Leviton at dleviton@brownandjoseph.com."

(A0016) (**emphasis** added). *See also* Declaration of Service regarding Appellee's Request for Entry of Default ("On February 24, 2021, I caused a true and correct copy of the Default Papers to be served via electronic email **upon Peter Geldes, counsel to Sumec** (PGeldes@brownandjoseph.com")).  (A0025) (**emphasis** added).

This belief is unreasonable.  First, the B&J website makes clear it is a collection agency.  Second, Mr. Geldes' signature block on emails sent to Appellee's counsel expressly provides that Mr. Geldes is a "Claims & Investigations Manager" for B&J identified as an "Accounts Receivable Management Firm" and "Credit and Collection Specialists."  (A1046, A0718-0719).  Third, B&J expressly disclaimed it was a law firm or counsel to SUMEC but Appellee's counsel made no investigation and took no corrective action.

**Prior to Entry of the Default Judgment, SUMEC Never Received the Summons & Complaint or the Default Papers, From Either Appellee or B&J**

*Before* Entry of the Default Judgment, SUMEC never received the Summons & Complaint, the default papers and related hearing notices from either Appellee or B&J/Mr. Leviton.  (A0079-0081).  Without knowledge or receipt of the pleadings, SUMEC could not and, therefore, did not, respond to any pleading, appear or defend itself in the underlying action.  (A0054).

***Before* Appellee Moved for Default Judgment, Mr. Geldes of B&J Sent an Email to Appellee's Counsel Making Clear that B&J was not a Law Firm and Had No Authority to Accept Service of Process for SUMEC.**

When B&J realized that Appellee's counsel may have been acting under the incorrect assumption that B&J represented SUMEC, Mr. Geldes, a Claims & Investigations Manager at B&J and Appellee's counsel's principal contact at B&J, made clear in writing that B&J had no authority to act for SUMEC.  By email dated March 30, 2021, Mr. Geldes advised Appellee's counsel:

> "I also wanted to **reiterate** that Brown & Joseph is **not authorized to accept service on Sumec's behalf**.  I believe that was discussed previously, but wanted to re-clarify.  We are **not a law firm**, we are not Sumec's attorney of record, and are only an authorized agent so far as the credit insurance claim that they filed is concerned."

(the "Geldes' Email").   (A0303) (**emphasis** added).   Appellee's counsel Noah Weingarten and Schuyler Carroll received the Geldes' Email *before* they sought entry of the Default Judgment.  The Geldes' Email put to rest *with finality* any confusion by Appellee's counsel about B&J's limited role in the case.  Following receipt of the Geldes' Email, Appellee should be estopped from contending that B&J had any authority, real or apparent, to accept service for SUMEC.

**The Weingarten Certification Concealed the Geldes' Email from the Bankruptcy Court.**

Following receipt of the Geldes' Email, Mr. Weingarten was on written notice that Appellee's service on B&J for SUMEC was defective.  The Geldes' Email is

material and directly relevant to the question whether SUMEC was lawfully (or ever) served with the Summons and Complaint.  Nevertheless, on May 21, 2021, Mr. Weingarten proceeded to seek entry of the Default Judgment against SUMEC without conducting any diligence on the Geldes' Email.[12]  (A0029).  Mr. Weingarten did not disclose the content or import of the Geldes' Email in his certification to the Bankruptcy Court seeking entry of the Default Judgment.  Mr. Weingarten certified: "[o]n September 3, 2020, [adversary defendant] **Sumec confirmed receipt of the Summons and Complaint**" (the "Weingarten Certification").  (A0033) (**emphasis** added).

The Weingarten Certification is troublesome in at least two ways.  First, it was submitted by Noah Weingarten, under oath, as counsel to Appellee and an officer of the court.  But when Mr. Weingarten submitted his certification, a factual submission to the Court, he knew it was false because it is directly and factually contravened by the Geldes' Email.  Good faith and candor are entirely lacking in the certification when Mr. Weingarten states that he confirmed receipt of the summons and complaint with SUMEC but (a) he never actually spoke with anyone at SUMEC and (b) Mr. Geldes previously had disclaimed any authority to accept service for SUMEC.

---

[12] Mr. Weingarten never even asked Mr. Geldes or Mr. Leviton to advise whether he forwarded the Summons and Complaint to a titled officer at SUMEC in China.

Second, the Weingarten Certification is also problematic because Mr. Weingarten owed a duty of candor to the Court. The Geldes' Email is material and relevant to the issue whether a default judgment should be granted. Mr. Weingarten concealed its content from the Court. Mr. Weingarten knew it might alter the Court's neutral consideration of his certification for the Default Judgement or at least prompt questions from the Court so he chose not to disclose it. Mr. Weingarten had a second opportunity to disclose the import of the Geldes' Email at the hearing conducted on the Request for Entry of Default Judgment conducted by the Bankruptcy Court on June 16, 2021. Again, he chose not to. (A1091).

## Appellee's Counsel Continued to Maintain that B&J is a Law Firm Even After it Received the Geldes' Email.

At all relevant times, Appellee's counsel interacted *solely* with Mr. Geldes at B&J on the mistaken and unreasonable belief that B&J was a law firm representing SUMEC. After receiving the Geldes' Email, Appellee's counsel continued to engage Mr. Geldes; *e.g.*, served the Motion for Entry of Default Judgment and solicit settlement discussions with Mr. Geldes. When SUMEC retained the undersigned in September 2021, and in an attempt to harmonize the parties' respective understanding of the facts, SUMEC noted to Appellee's counsel in an email (A0313)

that B&J was not a law firm[13] and lacked authority to accept service of process on SUMEC's behalf and therefore, service was defective.   Appellee's counsel disagreed, and continued to insist that B&J was a law firm representing SUMEC:

> "Thanks for your message, as it gave me a very good laugh.   I will not bother responding to each of the comically wrong and untrue assertions, because it would take me all day and even if all of them were correct, which they are not, you would still lose . . . .   **[H]aving appeared before Judge Grossman numerous times over his entire term and having practiced with him for nearly 20 years before that, I look forward to your making the argument that service on B&J is not valid because they are not a law firm is great, considering that the email address on this is 'Lawyer@brownandjoseph.com.'"**

("Email from Appellee's Counsel Schuyler Carroll").   (A0312) (**emphasis** added).

**SUMEC Filed the Motion to Vacate the Default Judgment**

On October 1, 2021, SUMEC filed its *Motion to Reopen Adversary Proceeding and Vacate Entry of Default Judgment* [Adv. D.I. 15] (the "Motion to Vacate") (A0042) and the supporting Declaration of Yan Gu [Adv. D.I. 15-1] (the "Gu Decl.") (A0073).   The Motion for Vacate requested relief under Rule 60(b), incorporated under Bankruptcy Rule 9024, and Rule 55(c), incorporated under

---

[13] The question whether B&J is a law firm is answered by a quick review of its website at https://brownandjoseph.com/ or by an email/phone call to B&J requesting confirmation of their role in the case.   As set forth in the Declaration of Zhao Liu [Adv. D.I. 22, Ex. 2] ("Liu Decl."), a three minute Google search revealed that B&J is a debt collection agency.   (A0775.)   That fact is also ascertainable from Mr. Geldes' signature block.   (A1046).

Bankruptcy Rule 7055.  (A0058).  On October 20, 2021, Appellee filed his objection [Adv. D.I. 17] ("Objection") to the Motion to Vacate.  (A0456).  On October 24, 2021, SUMEC filed a reply [Adv. D.I. 22].  (A0739).

The Motion to Vacate sets forth SUMEC's meritorious defenses with supporting documents (A0069-A0070), and the Gu Decl. makes clear entry of the Default Judgment did not result from SUMEC' willfulness (A0068-0069).  Also, there is no evidence that Appellee will suffer any prejudice if the Default Judgment is vacated (A0070-0071) beyond having to litigate the complaint on its merits.  Any delay/prejudice claimed by Appellee is self-imposed by knowingly filing a fraudulent certification with the Court.  (A0069).

**At the Initial Hearing, the Bankruptcy Court Declined to Consider the Rule 55(c) Relief**

On October 27, 2021, the Bankruptcy Court held its initial hearing on the Motion to Vacate.  (A1096).  At the hearing, the Bankruptcy Court directed the parties to submit additional briefing on the *sole* issue whether B&J had *apparent authority* to accept service of process on behalf of SUMEC.  (A1110).  SUMEC sought to address its Rule 55(c) argument at the Oct. 27 Hearing:

> **Mr. Rosner**: We obviously will comply with the Court's directive and file a brief by the 15th.  But I'll note and we definitely disagree with the plaintiff's position, but even if we were served, even if the Court finds that, which we respectfully prefer the Court not to, we have grounds -- separate grounds under Rule 55(c) to vacate any default judgment, even if we were served.  So I want to know how

> that argument fits in with the Court's instruction, because we could proceed to talk about the three criteria for being relieved from default judgment even if the Court found that we were properly served, which we strenuously object to.
>
> **The Court**: I can -- Mr. Rosner, I can give you a very long answer on that, but since most of these guys know me, I'll do it short.  I didn't think about that one.  I don't want to think about that.  I'm focused on the service question and agency.   The others become more complicated and whether there are issues of fact or law, I don't want to deal with it.  I can't get through the service question.

(A1111-1112).

The Court also directed that no discovery would be permitted, "nothing . . . there'll be no discovery.  There'll be nothing until I get the brief."  (A1114).

## Supplemental Briefing

On November 15, 2021, SUMEC and Appellee filed their supplemental briefs on the issue of apparent authority [Adv. D.I. 25 & 26].   (A0785 and A1057, respectively).

## The Bankruptcy Court Denied the Motion to Vacate at the Second Hearing

On November 22, 2021, the Bankruptcy Court held a second hearing on the Motion to Vacate.  (A1121).  The Motion to Vacate was denied.  At the conclusion of the hearing, the Bankruptcy Court again pushed off SUMEC's request for Rule 55(c) relief.  (A1124).  Counsel to SUMEC again queried:

> "I think in the Court's rendering – oral rendering of the decision i[s] focused on Rule 60(b) as incorporated into

> the bankruptcy rules through 9024.  We also moved under
> Rule 55(c) as incorporated into the bankruptcy rules by
> Rule 7055(c). Does the Court's ruling also include a denial
> under 55(c)?"

The Court replied:

> "The Court's ruling says what it does.  I'm not getting into
> what is or is not.  We took all things into consideration.
> This is the basis of what the court viewed was the motion
> by the parties and the decision of the Court."

(A1132).

On November 23, 2021, the Bankruptcy Court entered its Order [Adv. D.I.

27] (A1066) and Opinion [Adv. D.I. 28] (A1068).

**Appeal**

On December 2, 2021, SUMEC filed a notice of appeal of the Order pursuant

to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8003(a) [Adv. D.I. 33] (the "Appeal").

(A1139).

On January 13, 2021, this Court granted a stay pending appeal conditioned on

SUMEC posting cash security, which SUMEC did on January 19, 2022.

## ARGUMENT

I.   **The Bankruptcy Court's Conclusion that SUMEC Prepared the Proof of
     Claim and listed Don Leviton as its "agent" on the Proof of Claim Form
     is Clearly Erroneous.  It is Factually Incorrect and Contradicted by
     SUMEC's Sworn Testimony.**

The Bankruptcy Court held:

 "The law is clear that listing an agent in a creditor's proof of claim means that the agent is 'explicitly appointed . . . as [the creditor's] authorized agent for service of process' under Bankruptcy Rule 7004(b)(3) and that service of process on that agent at the address listed in the proof of claim constitutes proper service under Bankruptcy Rule 7004(b)(3)."

(A1076).

**SUMEC Did Not Prepare or Check any Boxes on the Proof of Claim, and Never Listed Don Leviton as its Agent.**

SUMEC did not fill out the Proof of Claim form, and did not hire or authorize Mr. Leviton to act for SUMEC in signing or checking any boxes on the Proof of Claim form. (A0078). SUMEC did not authorize Mr. Leviton to act as its agent for any purpose. *Id*. To the exact contrary, any debt owed by the Debtors to SUMEC was satisfied by insurance proceeds. SUMEC had no need to and did *not* file a proof of claim in the Debtors' bankruptcy cases. *Id.*

Mr. Leviton filled out and signed the proof of claim form *in SUMEC's name* without SUMEC ever seeing or approving it. *Id.* Mr. Leviton lacked authority to appoint himself SUMEC's agent. The Bankruptcy Court's conclusions are built entirely on the incorrect factual presumption that Mr. Leviton had authority to fill out the proof of claim form *for SUMEC* and appoint himself SUMEC's agent. This is factually incorrect, and contrary to the sworn testimony of SUMEC. (A0078-0079). The Bankruptcy Court erred in ruling that SUMEC is liable for

approximately $700,000 based on a Proof of Claim SUMEC did not prepare, sign or file.

There is no factual support for the Bankruptcy Court's conclusion that Mr. Leviton was SUMEC's "agent" for purposes of accepting service of process. SUMEC is not in privity with either B&J or Mr. Leviton.  Mr. Leviton has no affiliation with SUMEC. (A0078).  SUMEC never even communicated with Mr. Leviton.  (A0777).  SUMEC similarly had no communication with anyone else at B&J or knew who B&J was until after entry of the Default Judgment.  (A0079, A0776).  There are no words or conduct *by SUMEC* that would lead Appellee's counsel to believe Mr. Leviton was its agent.  B&J's limited authority came solely from the *Trust Deed Letter of Instruction*—an agreement between B&J and SINOSURE (not SUMEC)—by which SINOSURE hired B&J to file the Proof of Claim in either SINOSURE's or B&J's name, <u>not</u> SUMEC's.  (A0109).  The Proof of Claim should be read as SINOSURE, as subrogee, asserting SUMEC's claim. (A0076, A0094).

## II.   The Bankruptcy Court Incorrectly Shifted the Burden of Proof to Establish Valid Service from Appellee to SUMEC.

The Bankruptcy Court made the following finding:

> "After reviewing the evidence and considering the legal arguments, the Court finds that Sumec has not met its burden and the Plaintiff properly relied on the address listed in the proof of claim for service of the summons and complaint."

(A1069).   The Bankruptcy Court incorrectly imposed the burden on SUMEC. Service is a factual inquiry.  Appellee bears the ultimate burden of showing that he properly served SUMEC.  *See, e.g., Castro v. Cusack,* No. 15 CV 6714 (ENV) (LB), 2019 U.S. Dist. LEXIS 27124, at *7 (E.D.N.Y. Feb. 19, 2019) ("Once a defendant challenges the adequacy of service, the plaintiff bears the burden of establishing that service was in compliance with the applicable rules."); *Fifth Third Bank v. Mytelka,* No. 05-mc-52 (DLI), 2008 U.S. Dist. LEXIS 63435, at *5 (E.D.N.Y. Aug. 16, 2008) ("The burden is on the plaintiff to perfect service of process and show that proper service was made. . . . Once [the validity of service] has been contested, however, it is ultimately plaintiff's burden to demonstrate that service was proper.").

### A.   SUMEC Met its Initial Burden of Challenging Appellee's Purported Service

The sworn declaration of Yan Gu, a principal of SUMEC, was submitted to challenge Appellee's defective service of process.  Under oath Mr. Gu stated:

- SUMEC was never served with the Summons & Complaint (A0083);

- SUMEC never received a copy of the Summons & Complaint, the default papers and related hearing notices from either B&J, SINOSURE or directly from Appellee (A0080-0081);

- Without knowledge or receipt of the aforementioned pleadings, SUMEC could not and, therefore, did not, respond to any pleading, appear or defend itself in this matter before entry of the Default Judgment (A0081);

- SUMEC did not learn about B&J's involvement in this case until *after* entry of the Default Judgment (A0080);

- Contrary to the hearsay statements the Court relied on in its Opinion; *i.e.,* email from Mr. Geldes to Appellee's counsel stating that "he was in contact with Sumec" (A1071-1072), SUMEC never was in contact with or ever communicated with anyone at B&J *before* entry of the Default Judgment.  (A0078-0081, A0083, A0776);

- SUMEC never retained B&J (A0077-0078);

- SUMEC never authorized B&J to act as SUMEC's agent for any purpose, except *after* entry of the Default Judgment for the limited purpose of communicating settlement offers before it retained counsel (A0074, A0078-0079, A0083);

- SUMEC never authorized B&J to file a proof of claim on its behalf (A0078);

- SUMEC never saw, reviewed or signed off on the Proof of Claim before it was filed, or had knowledge that B&J filed the Proof of Claim in its name (A0078); and

- SUMEC, for the first time received a copy of the filed Proof of Claim from B&J on September 20, 2021 (Beijing Time); *i.e.* after entry of the Default Judgment (A0078).

SUMEC met its initial burden of challenging Appellee's purported service with the Gu Decl. and the attachments to the Proof of Claim.  Mr. Leviton never was appointed by SUMEC as its agent for any purpose and he cannot, acting unilaterally, lawfully appoint himself as SUMEC's agent by checking a box.

A plaintiff "must meet this burden by making a prima facie case of proper service through specific factual allegations and any supporting materials." *Castro*, 2019 U.S. Dist. LEXIS 27124, at *7 (internal citation omitted).  "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Id.* (internal citations omitted).  Appellee never was put to or met his

ultimate burden of proof of proper service on SUMEC.  The Default Judgment

should be deemed void and vacated.

**B.    Appellee Chose Not to Serve SUMEC By the Book and Should Not be Rewarded for Not Following the Rules.**

Bankruptcy Rule 7004, which incorporates Rules 4(f) and 4(h) of the Federal

Rules of Civil Procedure, sets forth the accepted mode of service for an entity based

in China; *i.e.*, compliance with the Hague Convention.  In *Kravitz v. Deacons (In re*

*Advance Watch Co.)*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018), Bankruptcy Judge Glenn

described in detail how to serve an entity in China in accordance with the Hague

Convention.  Appellee chose not to do that.  Appellee also chose not to provide

SUMEC with even bare notice of the Summons and Complaint by sending it to

SUMEC's known physical or email addresses publicly available in the Debtors' own

records.  (A0780).  Appellee also could have filed a motion seeking an order

authorizing service on Mr. Leviton pursuant to Federal Rules of Civil Procedure

4(f)(3).  Because Appellee ignored all authorized methods of service, Appellee's

defective efforts at service, that failed, should not be considered "reasonably

calculated" to reach SUMEC.  In fact, they did not.  (A0079-0081).

**C.    Appellee's Mistaken and Unreasonable Belief that B&J was a Law Firm Representing SUMEC was Negligence, not a Valid Excuse for Defective Service.**

SUMEC retained the undersigned to defend the preference action in

September 2021.  In an attempt to harmonize the parties' respective understanding

of the facts, SUMEC noted to Appellee that B&J is not a law firm, did not represent SUMEC and never had authority to accept service for SUMEC.  (A0313). Remarkably, Appellee's counsel disagreed, and continued to put forward the untenable position that B&J was a law firm representing SUMEC, as set forth in the Email from Appellee's Counsel Schuyler Carroll.  (A0312).

Appellee served B&J under the mistaken and entirely unreasonable belief that B&J was counsel to SUMEC.  *See* Declaration of Service for Appellee's Motion for Entry of Default: "[o]n February 24, 2021, I caused a true and correct copy of the Default Papers to be served via electronic email **upon Peter Geldes, counsel to Sumec** (PGeldes@brownandjoseph.com)."  (A0025) (**emphasis** added).  This is incorrect and reflects Appellee's lack of due diligence into effective service.  B&J is not a law firm.  The Geldes' Email also clearly and definitively dispelled any notion that B&J represented or had authority to accept service for SUMEC.  Appellee ignored the Geldes' Email because it was inconvenient to his purpose; *i.e.,* obtain a Default Judgment against SUMEC for nearly $700,000.

## III.    The Bankruptcy Court Erred as a Matter of Law in Ruling that Service of a Summons & Complaint at the Address Set Forth in the Proof of Claim is Proper.

There is no case that stands for the proposition that service of a summons and complaint on the "agent" listed in the proof of claim is effective service under Rule 7004(b)(3) as a matter of law.  The agent listed on the proof of claim is only

authorized to file the proof of claim and accept notices dealing with the allowance or disallowance of the claim.

The Bankruptcy Rules and case law draw a distinction between providing "notice" of a claim objection and "service" of an adversary proceeding. For a claim objection, service at the last known address as set forth in a proof of claim is sufficient and makes sense. Service of a summons and complaint, however, requires a higher degree of diligence to satisfy Rule 7004 and Due Process. <u>First</u>, the summons and complaint must be to the attention of a titled officer or other authorized decision maker so it is incumbent on plaintiff to conduct due diligence and confirm that service is directed to a *current* officer or agent.[14] <u>Second</u>, service on counsel for the defendant, without counsel first having requested and received client authority to accept service, is deficient. Appellee never asked Mr. Leviton if he had client authority to accept service for SUMEC. <u>Third</u>, there is no case that stands for the proposition that service on counsel to the defendant, without client authority, is good

---

[14] A proof of claim may be on file for years before an adversary proceeding is commenced against the claimant. The address may be stale because companies move. The officer who signed the proof of claim may also have moved to another job. When initiating an adversary proceeding, diligence is required to confirm strict compliance with Rule 7004. Due Process requires that service be *reasonably calculated* to reach a decision maker at the targeted defendant.

and sufficient service.  The cases relied on by Appellee and the Bankruptcy Court are factually and legally distinguishable.

The Bankruptcy Court cited to *Takeout, Inc. v. Favour Century Ltd. (In re Takeout, Inc.)*, Adv. Pro. No. 07-01666 (BRL), 2009 Bankr. LEXIS 735 (Bankr. S.D.N.Y. Mar. 17, 2009) ("*Takeout*").  But *Takeout* was not decided *as a matter of law*.  It was a litigated result that turned on specific findings[15] made after an evidentiary hearing.  If service of process on a foreign defendant's domestic attorney was sufficient service *as a matter of law*, then *Takeout* and other courts considering that issue would not come to disparate conclusions.[16]

---

[15] *Takeout* considered a number of factors—none present here—in determining the validity of service on domestic counsel for a foreign defendant. In *Takeout*, defendant was a petitioning creditor that signed the involuntary petition against the debtors, served on the official committee of creditors, was represented by counsel who played an active role on the committee, and filed a proof of claim which was signed by its actual counsel on behalf of the defendant.  *See also Ms. Interpret v. Rawe Druck-und-Verelungs-GmbH (In re Ms. Interpret)*, 222 B.R. 409, 416-17 (Bankr. S.D.N.Y. 1998) (defendant's *actual* counsel was served with process and was an active member of the creditors' committee, answered the complaint, appeared at the pre-trial conference, and filed a motion to dismiss; the plaintiff served a new summons and complaint; the defendant participated through its counsel on the committee, and the defendant's counsel "voted as a member [of the committee] without adjourning the proceedings to confer with [defendant]").  Here, SUMEC had *no* involvement in the case and did not even file a proof of claim.  Also, Messrs. Mr. Geldes and Leviton are *not* SUMEC's domestic counsel.

[16] *See Shipley v. Abrams (In re C.P. Hall Co.),* 513 B.R. 546 (Bankr. N.D. Ill. 2014) ("*CP Hall*") (service on counsel who signed the proof of claim for the targeted defendant *not* sufficient to satisfy Due Process); *In re Sunde*, No. 07-10151, 2007 Bankr. LEXIS 3704 (Bankr. W.D. Wis. Oct. 2, 2007) ("*Sunde*").  In *Sunde*, the debtor

In *Takeout,* plaintiff served defendant's *actual* domestic counsel.  That is *not* true here.  Neither Mr. Geldes nor Mr. Leviton was SUMEC's domestic counsel.  They had no affiliation with SUMEC.  (A0078).  SUMEC had no idea who Mr. Leviton, Mr. Geldes or B&J was until after entry of the Default Judgment.  (A0080).  To date, SUMEC has never had any communications with Mr. Leviton whatsoever.  (A0777).

**Appellee's Affidavit of Service Confirms that Service was Defective and No Diligence was Performed.**

---

mailed a claim objection to the address provided in the creditor's proof of claim form.  The court found that service was deficient and the order denying the claim was void.  The debtor made the exact same argument that Appellee makes here, and relied on *Ms. Interpret*.  *Sunde* at *4.  The *Sunde* court—like others—drew an important distinction between "notice" and "service"  that "emphasize[s] the important role that service plays in bankruptcy proceedings."  *Id*.  The *Sunde* court noted:

> "Nationwide service of process by first class mail is a rare privilege which can drastically reduce the costs and delay of litigation.  As a privilege, it is not to be abused or taken lightly.  Where the alternative to service by mail is hiring a process server to serve the papers in person, it seems like a small burden to require literal compliance with the rule. . . . Where the procedure outlined in a rule is less formal than the procedure it replaces, it should be strictly construed."

*Id*. at *5 (citation omitted).  Critically, the *Sunde* court concluded that "it is not persuaded that the plain language of Rule 7004(b)(3) should be overridden simply because the Creditor failed to provide a proper address for service on its proof of claim form."  *Id*. at *7.  Relying on Rule 60(b)(4), the *Sunde* court found the service defective and voided the order sustaining the debtor's objection to the creditor's claim.  *Id*. at *8.

Service of an adversary proceeding must be made on a decision maker at the targeted defendant and the filed certificate of service must reflect that.  Here, the filed Affidavit of Service fraudulently indicated that the Summons and Complaint were served on "**the Defendant and its attorneys**" by first class mail and email to Mr. Leviton.  (A0016) (**emphasis** added).  Appellee's counsel knew Mr. Leviton was *not* counsel to SUMEC because Mr. Leviton signed the Proof of Claim as "Legal Counsel" to B&J.  (A0103).  Appellee also knew he did *not* serve directly on the defendant, SUMEC.  Mr. Leviton was not an authorized officer at SUMEC.  Even worse, by reason of the Geldes' Email, Appellee knew service on Mr. Leviton was defective but took no investigative action to confirm Mr. Leviton's authority to accept service for SUMEC.

## IV. The Bankruptcy Court Abused its Discretion By Considering and Relying Upon for the Truth of the Matter Asserted Statements in Emails Attached to Appellee's Objection that are Hearsay, and Gave Less or No Weight to Sworn Statements Submitted by SUMEC that Contradicted the Hearsay.

The Opinion states that "[Mr. Geldes] represented several times that he was working with SUMEC to review the merits of the litigation." (A1071).  Mr. Geldes never testified in court subject to cross examination.  The Bankruptcy Court did not permit discovery of Mr. Geldes.  Mr. Geldes' "representations" are hearsay statements contained in emails dated November 11, 2020 and December 16, 2020. (A1071-1072).  The Bankruptcy Court incorrectly accepted as the truth of the matter asserted Mr. Geldes' unsworn out of court statements.  Mr. Geldes' statements are

also factually incorrect. Mr. Geldes *never* worked with or spoke to anyone at SUMEC at that time. (A0776, A0082).

The Bankruptcy Court's finding—that Mr. Geldes was "working with SUMEC to review the merits of the litigation"—makes no sense. Mr. Geldes, a debt collector, lacks the legal credentials to review *the merits* of a preference lawsuit. Mr. Geldes' hearsay statements are also specifically contradicted by the *sworn* declarations submitted by SUMEC and its counsel. *See* Gu Decl. at ¶¶ 24, 32 (SUMEC did not learn about B&J's involvement until August 4, 2021 Beijing Time; SUMEC for the first time communicated with Mr. Geldes on September 15, 2021 Beijing Time) (A0080); Liu Decl. at ¶ 7 (Ms. Liu discussed this matter with Mr. Geldes and determined that when Mr. Geldes referred to SUMEC, he actually meant SINOSURE) (A0776). The Bankruptcy Court erroneously gave greater weight to hearsay statements than sworn declarations. The Bankruptcy Court should have excluded as hearsay the statements made by Mr. Geldes in his emails.

## V. The Bankruptcy Court Erred in Finding that B&J was SUMEC's Sub-Agent Purpose of Accepting Service of Process, as a Matter of Fact and Law.

The Bankruptcy Court found:

> "In examining all of the facts and circumstances, there are sufficient **indicia of agency between Sumec and Sinosure** to find that Sumec was properly served. Sumec expressly permitted Sinosure to use Sumec's name when collecting on the debt. . . **Sinosure then appointed Brown & Joseph as its subagent** to perform the functions that

> Sumec conferred upon Sinosure.  This subagency was reflected **in the Trust Deed and Letter of Instruction, which confirms that Brown & Joseph has the full power to collect the debt.**"

(A1076-1077) (**emphasis** added).  The Bankruptcy Court did not "examin[e] all of the facts and circumstances" because it never scheduled or conducted an evidentiary hearing.[17]  There never was an opportunity for SUMEC to take discovery (A1114), to present witnesses or cross examine Appellee's factual adverments or admit or exclude documents from being admitted into evidence.  The Bankruptcy Court's phrasing "sufficient indicia of agency" (A1076) lacks legal clarity and is not supported by the relevant documents.

First, in the quoted language, the Bankruptcy Court omitted the second half of the sentence from the *Trust Deed and Letter of Instruction* regarding B&J's authority.  The full sentence reads: "[w]e [SINOSURE] further confirm to grant Brown & Joseph, LLC the full power in exercising such rights and remedies **in our [SINOSURE's] or its own [B&J's] name** . . . ."  (A0109).  The Bankruptcy Court ignored the fact that SINOSURE did not grant B&J any authority to collect the debt *in SUMEC's name*.  There is no sub-agency when B&J lacked authority to use SUMEC's name.

---

[17] The Opinion is incorrectly denominated "*Supplemental* Findings of Fact and Conclusions of Law."

Second, the Bankruptcy Court's conclusion that SUMEC hired SINOSURE to collect the debt *for SUMEC*, and SINOSURE, in turn, hired B&J as subagent to collect the debt *for SUMEC,* misconstrues the contractual relationship between the parties.  The relationship between SUMEC and SINOSURE is that of insured and insurer under a trade credit insurance policy.  After the Debtors filed bankruptcy, SUMEC submitted an insurance claim to SINOSURE and SINOSURE paid SUMEC on its insurance claim.  That ended SUMEC's involvement in the Debtors' bankruptcy cases.[18]  SUMEC did not engage SINOSURE, as agent, or B&J, as sub-agent.  SUMEC made an absolute assignment of its claim to SINOSURE, and SINOSURE, as subrogee, sought to collect the debt.  (A0076).

Third, the Court remarked that "Sumec could have anticipated that Sinosure would be participating in the Debtors' bankruptcy which would include the filing of a proof of claim."  (A1077).  SUMEC knew that SINOSURE, as subrogee and assignee of SUMEC's claim, intended to file a proof of claim.  SINOSURE paid SUMEC on its insurance claim and was subrogated to SUMEC's position.

---

[18] SUMEC denied under oath that B&J was performing any functions for it, and SUMEC had never even heard of B&J before entry of the Default Judgment. (A0080).  In fact, SUMEC never intended to and did not file the Proof of Claim. (A0078).  SUMEC elected not to participate in the Debtors' bankruptcy cases; *i.e.*, did not retain counsel, enter appearance, file any pleadings, or participate through or sit on the Official Committee of Unsecured Creditors despite solicitation from the U.S. Trustee's Office.

*SINOSURE* had every right to collect from the Debtors to offset its insurance payment.   SUMEC was required under the subrogation agreement to assist SINOSURE by providing copies of invoices evidencing the debt.  SUMEC did that but it had no further obligation, including overseeing how SINSOURE filed the claim or hired B&J, a collection agency, to file the claim.  SUMEC did not review or approve the Proof of Claimed filed by B&J.  (A0078).

The Bankruptcy Court's reliance on *Maclaren Eur. Ltd. v. Ace Am. Ins. Co.,* 908 F. Supp. 2d 417 (S.D.N.Y. 2012) ("*Maclaren*") in finding sub-agency is misplaced.  *Maclaren* did not address receipt of service of process, a factual inquiry. In *Maclaren* there was no factual dispute.  *Id*. at 426, n.1.  *Maclaren* dealt with the issue of whether an insured's broker may simultaneously act as an agent for the insurer.  The *Maclaren* court relied entirely on N.Y. insurance law and found that "[w]hen an insurer gives a policy to a broker for delivery to the insured, the insurer in effect extends credit to the broker, and the broker is thereby held to be an agent for the insurer for purposes of payment of the premium on that policy."  *Id*. at 420. The effect of N.Y. Insurance law is "to place a broker in a dual role."  *Id*. at 421. Appellee is not arguing that B&J served a similar dual role.  The *Maclaren* court also found "[i]t is common for an insured and an insurer to negotiate and enter into a contract of insurance through intermediaries."  *Id*. at 420.  Here, that relationship does not exist.

The Bankruptcy Court also misapplied fact to law in finding:

> A subagent, **acting within the scope of his authority**, may bind the principal as the agent may bind the principal. *Maclaren Eur. Ltd. v. Ace Am. Ins. Co.*, 908 F. Supp. 2d 417, 421 (S.D.N.Y. 2012). **This would include the authority to file the proof of claim in Sumec's name.**"

(A1077) (**emphasis** added).

The Bankruptcy Court's conclusion that B&J was acting within the scope of its authority when it purportedly accepted service of process on behalf of SUMEC is clearly erroneous and finds no support in the governing documents. Neither SUMEC nor SINOSURE ever even authorized B&J to act on SUMEC's behalf to collect the debt. Even if accepting the Bankruptcy Court's erroneous conclusion that B&J was authorized to collect the debt for SUMEC, that is a far cry from being authorized to accept service of process for SUMEC.

## VI. The Bankruptcy Court's Finding that B&J was "an agent authorized by appointment . . . to receive service of process [on behalf of SUMEC]" as required by Bankruptcy Rule 7004(b)(3) is Erroneous.

### A. B&J/Mr. Leviton Lacked Actual Authority to Act on Behalf of SUMEC.

It is axiomatic that Mr. Leviton unilaterally cannot appoint himself as agent for SUMEC. But that appears to be exactly what he did. SUMEC was never in privity or communication with Mr. Leviton. (A0078-0079). B&J had authority to file the Proof of Claim only in SINOSURE's or B&J's name. (A0109). SUMEC asserts that Mr. Leviton was acting on behalf SINOSURE. SUMEC itself did not

file a proof of claim or instruct anyone else to do so.  (A0078).  Finally, SUMEC had no control over how B&J prepared or signed the Proof of Claim or its unauthorized interactions with Appellee's counsel.  *Id.*

### B. B&J Lacked Apparent Authority to Act on Behalf of SUMEC.

Apparent authority requires a showing of (i) traceable conduct on part of the alleged principal (SUMEC) that misled a third party (Appellee) to believe that the alleged agent (B&J) had authority to act on behalf of the principal and (ii) reasonable reliance by the third party on the agent's representations.  *See, e.g., Star Funding, Inc. v. Tire Ctrs.*, LLC, 717 F. App'x 38, 41 (2d Cir. 2017).  Appellee failed to produce any admissible evidence for either element.  Any finding by the Bankruptcy Court that B&J had apparent authority to act for SUMEC is clearly erroneous.  There is no traceable conduct on the part of SUMEC that misled Appellee to believe that B&J had authority to act on behalf of SUMEC and Appellee's reliance on the email hearsay statements was entirely unreasonable, especially following receipt of the Geldes' Email.

> **1. There is no Traceable Conduct from SUMEC that Misled Appellee to Believe B&J had Authority to Accept Service of Process on SUMEC's Behalf and B&J Cannot Self-Appoint Itself as Agent for SUMEC.**

The Second Circuit rejects the notion that an agent can create apparent authority by his own actions and representations.  *See, e.g., Karavos Compania Naviera S. A. v. Atlantica Exp. Corp.*, 588 F.2d 1, 10 (2d Cir. 1978) ("the authority

of an agent, and its nature and extent . . . , can only be established by tracing it to its source in some word or act of the alleged principal.  The agent cannot confer authority upon himself or make himself agent merely by saying that he is one . . . . While agents are often successful in creating an appearance of authority by their own acts and statements, such an appearance does not create apparent authority") (internal citations omitted); *Fennel v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989) ("[T]he principal must manifest to the third party that he consents to have the act done on his behalf by the person purporting to act for him."); *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189, 193 (2d Cir. 1989) ("A decision whether apparent authority exists thus requires a factual inquiry into the principal's manifestations to third persons.") (internal citations omitted)*Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. CV 14-1095 (SJF) (AKT), 2016 U.S. Dist. LEXIS 107945, at *141 (E.D.N.Y. Aug. 12, 2016) (internal citations omitted) ("[e]ssential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.  The agent cannot by his own acts imbue himself with apparent authority."); *Fashion Tv Llc v. Telekom Aus. Aktiengesellschaft*, No. 17-cv-8350 (KBF), 2018 U.S. Dist. LEXIS 244304, at *7 (S.D.N.Y. Mar. 9, 2018) ("the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent

because of some misleading conduct on the part of the principal—not the agent")
(internal citations omitted).

Here, Mr. Leviton cannot without authority check a box on a proof of claim form and thereby lawfully become the agent for SUMEC, a Chinese company he never dealt with. For apparent authority to exist, there must be words or conduct *by SUMEC communicated directly to Appellee*, not just B&J's factually incorrect hearsay statements in emails. Any words, emails, or conduct by B&J alone is insufficient. SUMEC did not engage in *any* words or conduct with Appellee before entry of the Default Judgement. (A0079).

Appellee's contention, that he *thought* he was *indirectly* dealing with SUMEC, is insufficient. The Bankruptcy Court erred in accepting for the truth of the matter asserted the few emails Appellee received from Mr. Geldes to support Appellee's contention. (A0477). The Bankruptcy Court also erred in not affording the Geldes' Email the proper weight it deserved. The Geldes' Email put to rest definitively—before entry of the Default Judgment—any contention by Appellee that B&J had apparent (or any) authority to act on behalf of SUMEC. (A0303). Further, the Liu Decl. explains that when Mr. Geldes was referring to SUMEC, he really meant SINOSURE. (A0776).

### 2.   Appellee's Reliance on the Proof of Claim Form was Unreasonable.

The following rulings by the Bankruptcy Court are erroneous as a matter of law:

- "Plaintiff was under no obligation to go beyond the addressed listed in the proof of claim for Sumec."

- "It was not the Plaintiff's burden to sift through the proof of claim to see if there was an alternate [sic] address for service of the complaint, nor was the Plaintiff charged with making a phone call to ensure that the address on the proof of claim was the correct address."

- "The Court finds that the Plaintiff's reliance on the face of the proof of claim was reasonable …."

(A1077).

The service of a summons and complaint in bankruptcy is governed by Rule 7004(b)(3), not a proof of claim form.  Diligence is required to ensure that: (a) process is sent to a valid and current service address for the targeted defendant and (b) addressed to reach a decision-maker at defendant.  Appellee failed to do this.

Contrary to the Bankruptcy Court's erroneous conclusion, Appellee had a duty to confirm B&J's authority to act for SUMEC.  The Second Circuit has explained, "[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority . . . ." *First Fid. Bank*, 877 F.2d at 195 (internal citations omitted); *see also Unisys Corp. v. Pergament Distribs., Inc.*, No. 86-CV-4304 (ERK), 1991 U.S. Dist. LEXIS 2427, at *5 (E.D.N.Y. Feb. 11, 1991) (same).  The court must "determine whether the person relying on the apparent

authority fulfilled his 'duty of inquiry.'"  *First Fid. Bank,* 877 F.2d at 195; *see also*

*Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 996 (2d Cir. 1991) (In the

context of apparent authority, the duty to inquire "arises when the facts and

circumstances are such as to put him on inquiry[.] . . . [T]he duty of inquiry amounts

to an alternative way of asking whether the third party reasonably relied on the

representations of the agent that he possessed authority to bind the principal).

Appellee repeatedly was put on notice (or at least inquiry notice) that B&J

lacked authority to act for SUMEC:

- <u>First</u>, it is Appellee's burden to ensure lawful service and Appellee did not meet its burden.

- <u>Second</u>, Appellee never even bothered to make the following basic inquiry of B&J/Mr. Leviton:  do you represent SUMEC and are you authorized to accept service on its behalf?

- <u>Third</u>, *before* commencement of this adversary proceeding, the Proof of Claim put Appellee on notice that Mr. Leviton was legal counsel to B&J, not SUMEC.  Also, the Trust Deed and Letter of Instruction, which was attached to the Proof of Claim, put Appellee on inquiry notice because B&J was authorized to act *solely* for SINOSURE, *not* SUMEC.

- <u>Fourth</u>, Mr. Geldes' signature block put Appellee on notice that B&J is a collection agency, not a law firm.

- <u>Fifth</u>, the Geldes' Email is express *written notice* that B&J does not have authority to accept service of process on SUMEC's behalf.

A reasonably diligent attorney would have discovered that B&J/Mr. Leviton

were  not acting on SUMEC's behalf.  SUMEC's counsel did exactly that with a

quick Google search of the B&J website and a phone call with Mr. Geldes.  (A0776).

Further, any question whether B&J was acting in any capacity for SUMEC was put

to rest by the Geldes' Email.  *See First Fid. Bank*, 877 F. 2d at 195 (citing

Restatement (Second) of Agency § 165 (1958)) ("principal is not liable for agent's

improper actions if third party ***knows that agent is not acting for principal's***

***benefit***").  What is staggering on a professional and ethical basis[19] is the fact that

after receiving the Geldes' Email, Appellee made no investigation but instead pushed

on to secure the Default Judgment based on fraudulent representations in and

material omissions from the Weingarten Certification.

## VII.   The Bankruptcy Court Erred in Failing to Consider SUMEC's Request for Relief under Rule 55(c)

SUMEC separately moved for relief under Rule 55(c) which permits a court

to "set aside an entry of default for good cause, and . . . set aside a default judgment

---

[19] After receiving the Mr. Geldes' Email, Appellee's counsel had an ethical, professional duty to conduct reasonable due diligence to confirm Mr. Leviton/B&J's role in the case.  By not performing any diligence and pushing forward with the Default Judgment, Appellee's counsel failed to adhere to that duty.  *See* New York Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.3; Comment [3] ("[A]n assertion purporting to be based on the lawyer's own knowledge, as in an affidavit or declaration by the lawyer or in a statement in open court, may properly be made **only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.  There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation**.") (**emphasis** added).

under Rule 60(b)."  Fed. R. Civ. P. 55(c); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  The Second Circuit have established three criteria that must be assessed to relieve a party from default or a default judgment: (1) whether defendant's default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.  *Id*.  The Second Circuit also considers "other relevant equitable factors" such as "whether the entry of default would bring about a harsh or unfair result."  *Id*.

Here, all three factors favor *vacatur* of the Default Judgment.

### A.    SUMEC did not Default Because it was Never Served.

Default is willful if defendant's conduct was egregious or not adequately explained, or was strategic to ignore the litigation.  *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir. 1996).  Here, SUMEC's "default" was not willful.  SUMEC never received the Summons and Complaint and the default papers from either Appellee or B&J.  (A0080-0081).  SUMEC did not intentionally avoid the Complaint or strategically refuse to answer the Complaint.  To the contrary, upon first learning of the Complaint, SUMEC promptly communicated with SINOSURE to investigate and made good faith attempts to resolve the matter on a consensual basis with Appellee.  (A0082-0083).

In sharp contrast, Appellee did not act in good faith either in purporting to serve SUMEC or in seeking entry of the Default Judgment.  Appellee avoided any

lawful method of service and submitted multiple fraudulent certifications regarding service and entry of default. Appellee also concealed material information from the Bankruptcy Court in the Weingarten Certification (A0080-0081); *i.e.,* the Geldes' Email which expressly disclaimed that the party Appellee purported to serve had any authority to accept service.

### B. SUMEC has Meritorious Defenses.

There is a strong preference in the Second Circuit for deciding disputes on the merits. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("Because there is a preference for resolving disputes on the merits, default judgment is "the most severe sanction which the court may apply."); *Enron*, 10 F.3d at 96 ("[D]efaults are generally disfavored and are reserved for rare occasions. . . ."). Consequently, the court must resolve all doubts in favor of the party seeking to vacate, so as to ensure that disputes are resolved on the merits when possible. *Enron*, 10 F.3d at 96.

A defense is meritorious if it is "good at law so as to give the fact finder some determination to make." *American Alliance*, 92 F.3d at 61. At this stage, the defense does not need to be ultimately persuasive for purposes of a motion to set aside a default judgment. *Id.* Since becoming aware of this action, SUMEC has evinced a desire to defend this action on the merits. SUMEC has asserted, among others, the subsequent new value and ordinary course of business defenses.

Subsequent New Value Defense.  SUMEC asserts a subsequent new value defense in an amount not less than $547,809.49.  (A0084).  To substantiate the defense, SUMEC submitted a chart setting forth the amounts and shipping dates for each shipment constituting new value with the corresponding purchase orders, invoices, packing slips and bills of lading.  (A0328-0450).

Ordinary Course of Business Defense.  SUMEC began selling goods to the Debtor in 2008 and issued thousands of invoices before the Preference Period.  (A0084).  SUMEC's invoices were often paid in batches.  *Id.*  A single transaction sometimes encompassed as many as eighty (80) invoices, if not more.  *Id.*  During the two year historical period, there are more than 1000 invoices.  *Id.*  All payments that SUMEC allegedly received during the Preference Period fall within the range of payments it received during a two year historical look back period.  *Id.*

## C.   Appellee Will Not be Prejudiced if the Default Judgment is Vacated.

"'Prejudice' in this context means the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion—circumstances that make it more difficult for plaintiff to prosecute its case."  *See Roberts v. Keith*, 2007 U.S. Dist. LEXIS 68811, at *14-15 (S.D.N.Y. Sep. 18, 2007) (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).  The delay occasioned by a court's vacation of the default judgment "alone is not a sufficient basis for establishing prejudice."  *Id.*  Appellee must show more than it would be required to litigate the merits of the claim.

*TCI Group Life Insurance Plan v. Knoeber*, 244 F.3d 691, 701 (9th Cir. 2000).  Here, Appellee will not be prejudiced if the default is vacated.  This adversary proceeding is not even in its nascent stage.  No discovery has been propounded, and no mediation has been conducted.  There will be no loss of evidence.  Appellee will only have to litigate the case which is not prejudice in this context.

**WHEREFORE**, for the foregoing reasons, SUMEC respectfully requests this Court reverse the Bankruptcy Court's Opinion and Order, vacate and find the Default Judgment void *ab initio*, and grant such other relief as is just and proper.

Respectfully submitted,

Dated:  January 31, 2022

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner
Zhao (Ruby) Liu
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

*Counsel to Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I, Frederick B. Rosner, hereby certify that:

1.     The foregoing *Opening Brief by SUMEC Textile Company Limited in Support of Appeal from Order of Bankruptcy Court Denying Motion by SUMEC Textile Co. Ltd. to Reopen Adversary Proceeding and Vacate Entry of Judgment* complies with the type-volume limit set forth in Fed. R. Bankr. P. 8013(f)(3)(C) because, excluding those portions of the document exempted by Fed. R. Bank. P. 8015(g), this document contains 12947 words.

2.     The foregoing *Opening Brief by SUMEC Textile Company Limited in Support of Appeal from Order of Bankruptcy Court Denying Motion by SUMEC Textile Co. Ltd. to Reopen Adversary Proceeding and Vacate Entry of Judgment* complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 Times New Roman.

Dated: January 31, 2022                    By: */s/ Frederick B. Rosner*
                                                           Fredrick B. Rosner