**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SUMEC TEXTILE COMPANY LIMITED, | Bankruptcy Appeal |
| Appellant, | Civil Action No. |
| v. | 2:21-cv-06725-GRB |
| BRYAN RYNIKER, IN HIS CAPACITY AS LITIGATION ADMINISTRATOR OF THE POST-CONFIRMATION ESTATES OF DÉCOR HOLDINGS, INC., *et al.*, | |
| Appellee. | |

**REPLY BRIEF BY SUMEC TEXTILE COMPANY LIMITED**
**TO BRIEF FOR PLAINTIFF-APPELLEE**

Dated: March 15, 2022

**THE ROSNER LAW GROUP LLC**

Frederick B. Rosner
Zhao (Ruby) Liu
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

*Counsel to Appellant*

{00032979. }

# **TABLE OF CONTENTS**

REPLY ............................................................................................................1

I.    Appellee Failed to Serve SUMEC or Satisfy Due Process. .................3

     A.    Appellee Did Not Act Reasonably in Selecting a Means
of Service Likely to Inform SUMEC of the Summons
and Complaint or the Motion for Entry of Default
Judgement. .................................................................................3

     B.    Appellee Seeks to Reverse the Burden of Proving Valid
and Effective Service and Place it on B&J. ..............................5

II.    The Bankruptcy Court Denied SUMEC the Right to Take
Discovery and Failed to Donduct a Fair Hearingon SUMEC's
Motion to Vacate. ...............................................................................6

III.    The Bankruptcy Court Inappropriately Relied on Double
Hearsay Statements to Reach an Erroneous Conclusion. ...................7

IV.    The Bankruptcy Court Failed to Consider Key Documents and
Erroneously Found Sufficient Indicia of Agency That B&J was
SUMEC's Subagent. .........................................................................13

     A.    The Bankruptcy Court Opinion Ignored the *Subrogation
Agreement*....................................................................................13

     B.    The Bankruptcy Court Opinion Ignored a Critical Aspect
of the *Trust Deed and Letter of Instruction*. ...........................14

V.    Appellee's Counsel's Belief That Mr. Geldes was Either
SUMEC's Agent or its Counsel was Unreasonable. ..........................15

VI.    B&J was Never "Explicitly Appointed" to Accept Service of
Process for SUMEC or Even to File a Claim for SUMEC. ...............18

VII.    The Factual Record Does not Support Entry of the Default
Judgment. ...........................................................................................22

CONCLUSION ..........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Beloit Liquidating Tr. v. Beloit Walmsley Ltd. (In re Harnischfeger Indus.)*, 288 B.R. 79 (Bankr. D. Del. 2003) .........................................................19

*Fashion Tv Llc v. Telekom Aus. Aktiengesellschaft*, No. 17-cv-8350 (KBF), 2018 U.S. Dist. LEXIS 244304 (S.D.N.Y. Mar. 9, 2018)..................18, 19

*In re Advance Watch Co.*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018).......................18, 19

*Luedke v. Delta Air Lines*, 159 B.R. 385 (S.D.N.Y. 1993) ......................................19

*Ms. Interpret v. Rawe Druck-und-Veredlungs-GmbH (In re Ms. Interpret)*, 222 B.R. 409 (Bankr. S.D.N.Y. 1998)....................................................19

*Muralo Co. v. All Defendants Listed on Exibits A Through D to Complaint (In re Muralo Co.)*, 295 B.R. 512 (Bankr. D.N.J. 2003) ....................19

*Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33 (E.D.N.Y. 1996)........................................................................................................................20

*Reisman v. First New York Bank (In re Reisman)*, 139 B.R. 797 (Bankr. S.D.N.Y. 1992)......................................................................................................19

*Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004) .............19

*Shipley v. Abrams (In re C.P. Hall Co.)*, 513 B.R. 546 (Bankr. N.D. Ill. 2014)................................................................................................................19

*Weigner v. New York*, 852 F.2d 646 (2d Cir. 1988) ...................................................3

**RULES**

Fed. R. Bankr. P. 7004(b)(3) ....................................................................................18

Fed. R. Civ. P. 55...........................................................................................7, 10, 11

Fed. R. Evid. 805. .......................................................................................................8

SUMEC Textile Company Limited ("SUMEC"), by and through its undersigned counsel, submits this Reply to *Brief For Plaintiff-Appellee* [Dkt. No. 14] ("Ans. Br.") and in further support of its *Opening Brief by SUMEC Textile Company Limited in Support of Appeal from Order of Bankruptcy Court Denying Motion by SUMEC Textile Co. Ltd. to Reopen Adversary Proceeding and Vacate Entry of Judgment* [Dkt No. 12] ("Open. Br.").[1]  In support hereof, SUMEC states as follows:

## REPLY

The Bankruptcy Court erred in several fundamental ways.  First, the Bankruptcy Court did not require Appellee to meet his burden of proving, with respect to the Summons and Complaint, that he selected a reasonable means of effecting service upon, or providing notice to, SUMEC in China.  In fact, Appellee made no effort to serve SUMEC in China.  Second, the Bankruptcy Court prohibited parties from taking discovery to create an evidentiary record and then ruled without conducting a fair or evidentiary hearing.  Third, the Bankruptcy Court in its Opinion incorrectly relied on inadmissible double hearsay statements contained in emails Appellee's counsel received from Peter Geldes, a debt collector from B&J, to find

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Open. Br. and Ans. Br.

{00032979. }

sufficient "indicia of agency" for purposes of service.  (A1076).  By prohibiting SUMEC the opportunity to take discovery of Mr. Geldes or cross examine him at trial, the Bankruptcy Court abused its discretion.   Fourth, in reaching its conclusion that there was "sufficient indicia of agency," the Bankruptcy Court ignored the business and contractual relationship between the parties and certain key documents. SINOSURE, as an insurance company, was subrogated to SUMEC's claim and the claim was filed by B&J *for SINOSURE*, as subrogee.   The *Trust Deed and Letter of Instruction* between SINOSURE and B&J does *not* authorize B&J either to file a claim *for SUMEC* or *in SUMEC's name*.  (A0109).  Finally, the Bankruptcy Court failed to address the substantial discrepancies between Appellee's counsel's certifications and the complete lack of factual support for such representations.  To secure the Default Judgment, Mr. Weingarten falsely certified to the Bankruptcy Court that SUMEC had actually confirmed receipt of service when, at that time, Weingarten was interacting Mr. Geldes, a debt collector, who had no affiliation with SUMEC and had expressly disclaimed in writing any authority to accept service for SUMEC.

# I.   APPELLEE FAILED TO SERVE SUMEC OR SATISFY DUE PROCESS.

## A.   Appellee did not Act Reasonably in Selecting a Means of Service Likely to Inform SUMEC of the Summons and Complaint or the Motion for Entry of Default Judgement.

Appellee did not meet his burden of showing that SUMEC was ever served or that SUMEC's right to Due Process was met.  The factual record is undisputed that SUMEC resides in China and has no registered agent or place of business in the United States.  (A0074).  Service upon SUMEC, therefore, must be in accordance with the Hague Convention.  The factual record is undisputed that Appellee made no attempt to comply with the Hague Convention (A0015-0016) even though Appellee had SUMEC's valid physical address in China (A0780).  Appellee also failed to provide even bare notice to SUMEC even though at all times it had valid email addresses for SUMEC personnel.  (A0780).  As the Second Circuit has held, "[t]he proper inquiry in evaluating notice is **whether a party acted reasonably in selecting means likely to inform persons affected**, not whether each person actually received notice." *See Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988) (**emphasis** added).  Appellee acted unreasonably because he ignored the valid "by the book" means of service and also ignored SUMEC's valid physical and email addresses.  Instead, Appellee's counsel spent seven (7) months interfacing with Peter Geldes at B&J but never, during all that time, had an exchange of emails confirming Mr. Geldes' authority to accept service for SUMEC.  Even worse, to secure the

Default Judgment, Mr. Weingarten falsely represented to the Bankruptcy Court that SUMEC "confirmed receipt" of the Summons and Complaint *after* receiving the March 30, 2021 Geldes Email (A0303) whereby Mr. Geldes expressly disclaimed any authority to accept service on SUMEC's behalf.  The Bankruptcy Court never had jurisdiction over SUMEC.  Appellee should not benefit from this lack of diligence and his counsel's false certifications.  The Order should be reversed and the Default Judgment vacated.

The Ans. Br. tells a 51-page story how Appellee's counsel interfaced with Peter Geldes during the seven (7) month period between August 2020 and March 2021.  Ans. Br. at 45-46.  In all that time, however, Appellee's counsel never—in a reasonable and prudent manner—nailed down with written certainty whether Peter Geldes had authority to accept service for SUMEC.  Noticeably absent from the factual record is the typical exchange of emails confirming that Mr. Geldes had authority to accept service for SUMEC.  The Ans. Br. is not even clear which person or entity actually is the correct party to serve, alternatively suggesting that it is either: (a) Don Leviton, counsel to B&J; (b) Peter Geldes, a claims investigator at B&J; or (c) B&J.  Ans. Br. at 7.

**B.      Appellee Seeks to Reverse the Burden of Proving Valid and Effective Service and Place it on B&J.**

The Ans. Br. asserts it was not Appellee's duty to satisfy Due Process but actually B&J's duty to deny it had authority to accept service for SUMEC. Specifically, the Ans. Br. points the finger at Peter Geldes and conveniently claims:

- "***Leviton and Geldes do nothing to disclaim their agency or authority to accept service of process on Sumec's behalf.***"  Ans. Br. at 7.

- "Nor does Brown & Joseph claim that Brown & Joseph never acted as Sumec's agent."  *Id.* at 35.

- "If Brown & Joseph wanted to disclaim its agency for past communications, common sense[2] dictates that it would say that it was no longer acting as Sumec's agent."  *Id.*

- If Brown & Joseph wanted to disclaim its agency for past communications, it should have said that."  *Id.*

The contentions of the Ans. Br. are entirely self-serving conjecture and disingenuous because the Bankruptcy Court forbade discovery.  (A1114) ("nothing . . . there'll be no discovery. There'll be nothing until I get the brief.").  Further, Appellee cannot satisfy *his burden* of satisfying Due Process by faulting what Mr. Geldes did or did not do.  In any event, the factual record is inapposite.  The March 20, 2021 Geldes' Email expressly states "**I also wanted to reiterate that Brown & Joseph is not**

---

[2] Appellant counters with its own common sense: attorneys should know who they are dealing with and who they represent.

**authorized to accept service on Sumec's behalf.**  I believe that was discussed previously, but wanted to re-clarify") (**emphasis** added) (A0303).

SUMEC respectfully submits that it was denied Due Process twice in this case.  First, when Appellee failed to serve it with the Summons and Complaint or the request for default papers.  Second, when the Bankruptcy Court forbade discovery and ruled without conducting an evidentiary or fair hearing that allowed for the presentation of witnesses, deposition testimony, evidence or objecting to the admission of evidence.  The Bankruptcy Court erroneously based its ruling on double hearsay statements in emails.

## II.   THE BANKRUPTCY COURT DENIED SUMEC THE RIGHT TO TAKE DISCOVERY AND FAILED TO CONDUCT A FAIR HEARING ON SUMEC'S MOTION TO VACATE.

The Bankruptcy Court conducted an initial hearing on SUMEC's Motion to Vacate that was non-evidentiary in accordance with the Local Rules.[3]  The Bankruptcy Court then directed the parties to submit supplemental briefing on a discrete issue (A1110) and prohibited any discovery pending the second hearing (A1114).  Notwithstanding the Bankruptcy Court's prohibition, SUMEC expressly reserved the right to take discovery.  ("If this matter is not resolved, SUMEC seeks

---

[3] Local Rule 9014-2 provides that "[t]he first scheduled hearing in a contested matter *will not be an evidentiary hearing*, at which witnesses may testify" unless one of the specified criteria is met.  E.D.N.Y. LBR 9014-2.

a formal schedule coordinating discovery so it proceeds in an orderly, not a haphazard fashion.") (A0752)    At the next hearing, the Bankruptcy Court ruled at the outset of the hearing.  (A1121).  That ruling failed to address SUMEC's request for relief under Rule 55.  (A1124).

The Bankruptcy Court found "sufficient indicia of agency" to rule that Geldes was SUMEC's agent.  (A0176).  That conclusion, however, was not based on deposition testimony, written discovery or Geldes' testimony at trial subject to cross examination, all of which the Bankruptcy Court prohibited.  Instead, the Bankruptcy Court erroneously relied on double hearsay statements contained in emails from Mr. Geldes.  (A0711-0712).  Had the Bankruptcy Court applied the Federal Rules of Evidence, the Geldes' hearsay statements should have been excluded as inadmissible double hearsay.

## III.   THE BANKRUPTCY COURT INAPPROPRIATELY RELIED ON DOUBLE HEARSAY STATEMENTS TO REACH AN ERRONEOUS CONCLUSION.

In reaching its erroneous conclusion, the Bankruptcy Court relied on certain of Mr. Geldes' emails dated November 11, 2020 (A0712) and December 16, 2020 (A0711) that contain double hearsay.  By these emails, Mr. Geldes tells Mr. Weingarten what "SUMEC" allegedly said.  But Mr. Geldes did not testify and, per the Bankruptcy Court's Order, did not provide deposition testimony.  SUMEC was denied any opportunity to cross examine Mr. Geldes:  who did he speak with at

SUMEC; did he mean SINOSURE when he said SUMEC; what is the source of his authority to speak for SUMEC?  Mr. Geldes, in his emails, refer separately to *his client* and *the creditor*; *i.e.*, SUMEC.  (A0719) ("I am also reviewing with our client and the creditor").  The emails from Mr. Geldes and the statements contained therein constitute double hearsay and, to be considered by a court, both layers of hearsay must be admissible.  Fed. R. Evid. 805.  Here, neither is admissible and inapposite to the factual record. Further, if accepted by the Court, it provides a very subjective standard for what constitutes service; *i.e.,* plaintiff's perception of a third party's conduct.

Furthermore, the hearsay emails relied upon by the Bankruptcy Court are contradicted by other documents in the record which the Bankruptcy failed to address.  As set forth in both the Gu Decl. and Liu Decl., Mr. Geldes never spoke with anyone at SUMEC *before* entry of the Default Judgment.  (A0079, A0776).  In fact, Mr. Geldes has acknowledged that sometimes when he said "SUMEC" he actually meant "SINOSURE."  (A0776).  The Liu Decl. calls into substantial doubt the reliability of the statements made by Mr. Geldes.  *Id*.  Finally, the emails by Geldes containing hearsay relied on by the Bankruptcy Court to find "indicia of agency" are later belied by Mr. Geldes himself who expressly disclaimed he had *any* authority to accept service of process for SUMEC.  (A0303)  ("I also wanted to reiterate that Brown & Joseph is not authorized to accept service on Sumec's

behalf. . . . We are not a law firm, we are not Sumec's attorney of record, and are only an authorized agent so far as the credit insurance claim that they filed is concerned").

The Opinion is predicated on unreliable double hearsay statements and is clearly erroroneous.  Tennis is a game played with a net.  If we throw out the net, it is no longer tennis.  The same applies to conducting a fair trial and the FRCP and FRE.

The Ans. Br.'s blithe response to this is:  "[i]f Sumec wanted to prove that it had not communicated with Geldes—contrary to Geldes' own emails—*it **should have obtained actual admissible evidence from Geldes***."  Ans. Br. at 38 (**emphasis** added).  This remark is disingenuous because, as Appellee well knows, the Bankruptcy Court *expressly forbade discovery* (A1114) and *failed to conduct an evidentiary hearing*.

The Ans. Br. contends, "Geldes repeatedly g[ave] every indication over the next six months that he is Sumec's agent by seeking a settlement and obtaining extensions on Sumec's behalf[,]" Ans. Br. at 5, and "[i]n August 2021, after entry of the Judgment and contrary to Geldes' prior attempt to disclaim his authority, Brown & Joseph again confirms its authority to act on Sumec's behalf[,]" *id.* at 11.  This argument treats two separate and distinct time frames; *i.e.,* before and after entry of the Default Judgment, as though they were one and that SUMEC continuously was

engaged.  This is incorrect.  Before entry of the Default Judgment, as the Gu Decl. makes clear, SUMEC did not know about B&J and was not involved.  After entry of the Default Judgment, SUMEC became aware of the action and worked through SINOSURE and B&J to settle it.  (A0082).

In the absence of facts and admissible evidence in the appellate record, the Ans. Brief relies on lawyer argument, hyperbolic and incorrect rhetoric, and pure conjecture presented as fact but with no reference to, and controverted by, the appellate record.  Large portions of the Ans. Brief, therefore, should be stricken.  For example, but without limitation:

- "Sumec's default was 'willful,' under applicable case law which, along with the prejudice to the Litigation Administrator, disqualifies Sumec from relief under Rule 55."  Ans. Br. at 1.

  Response: The Bankruptcy Court did *not* hear evidence on, and did *not* find, that SUMEC's default was willful.  To the contrary, the sworn uncontroverted facts are that Appellee never attempted to serve SUMEC in China in compliance with the Hague Convention and SUMEC never received the Summons and Complaint or the default papers from either Appellee or B&J prior to entry of the Default Judgment.  (A0080-0081).  There was no willfulness in SUMEC's default.

  The factual record does not support a finding of *any* prejudice to Appellee in vacating the Default Judgment (A0070-0071) beyond having to litigate the complaint on its merits.  Any delay or prejudice claimed by Appellee is self-imposed by attorney Noah Weingarten who knowingly filed a *fraudulent* certification with the Court.  (A0033).  Mr. Weingarten, after learning that Mr. Geldes was *not* an attorney representing SUMEC and lacked authority to accept service of process, certified to the Bankruptcy Court that "SUMEC confirmed receipt" of the Complaint to secure the valuable Default Judgment.  *Id.*

{00032979. }                                    10

It is disingenuous for Appellee to assert that SUMEC's "willful" default "disqualifies Sumec from relief under Rule 55." The Bankruptcy Court did not consider or rule on SUMEC's request for relief under Rule 55. *See* Open. Br. at 24-26, 47; (A1132).

- "In its 51-page brief, Sumec gives no explanation as to why it flagrantly neglected to defend this case." Ans. Br. at 1.

  Response: This is categorically untrue. There was no neglect by SUMEC. SUMEC did not defend the case because Appellee failed to serve SUMEC and SUMEC had no knowledge of the action. *See* Gu Decl. at ¶ 30 ("Without knowledge or receipt of the Summons and Complaint, the Request for Default or the Motion for Default Judgment, SUMEC could not and, therefore, did not, respond to any pleading, appear or defend itself in this matter."). (A0081).

- "Yet the Bankruptcy Court rejected Sumec's allegations, finding counsel acted entirely properly." Ans. Br. at 2.

  Response: The Bankruptcy Court made no finding exonerating counsel in connection with the Weingarten Certification or the false Declarations of Service.

- "Sumec repeatedly complains that, prior to entry of the Judgment, it **supposedly** never received any of the legal papers, starting with the Summons and Complaint. Ans. Br. at 36 (**emphasis** added).

  Response: Appellee's challenge—by way of characterization—is without factual basis in the appellate record. It is undisputed that Appellee served all pleadings on B&J, *not* SUMEC in China, as reflected in the Declarations of Service filed by Appellee. (A0016, A0020, A0032). Appellee has no factual support that the Summons and Complaint actually reached SUMEC. The Gu Decl. *affirmatively* states that SUMEC did not receive the Summons, Complaint or the default papers from either the Appellee or B&J. (A0081). Mr. Gu also declared that, before entry of the Default Judgment, SUMEC was never in contact or ever communicated with anyone at B&J, or even knew who B&J was (A0078-0081, A0083). SUMEC's counsel also confirmed with Mr. Geldes and Mr. Leviton that B&J never provided the papers directly to SUMEC or ever communicated with SUMEC before entry of the Default Judgment. Liu Decl. at ¶¶ 7-8

(A0776-0777).  Appellee never factually controverted either the Gu Decl. or Liu Decl.

- "In August and September 2021 – some four months after Geldes purported disclaimer of agency – Geldes engaged in substantive settlement communications with the Litigation Administrator. **These are hardly the acts of a person disclaiming agency.**"  Ans. Br. at 25-26 (**emphasis** added).

  <u>Response</u>: This advocacy is disingenuous and dismissive, and without regard to the factual record.  SUMEC does not dispute that it authorized B&J to communicate settlement offers to Appellee **in September 2021**, *after* SUMEC finally learned about the lawsuit and *after* entry of the Default Judgment.  This was SUMEC's good faith attempt to consensually resolve the lawsuit without U.S. bankruptcy counsel.  *See* Gu Decl. at ¶¶ 32-39 (A0082-0083).  As set forth in the Gu Decl., on August 5, 2021, after entry of the Default Judgment, and for the first time, SINOSURE informed SUMEC about B&J's involvement.  (A0082).  At the time, SUMEC was caused to believe that B&J was a law firm and SINOSURE never corrected that misunderstanding.  *Id.*  SINOSURE also did not inform SUMEC about the entry of the Default Judgment.  *Id.*  Two weeks later, SINOSURE forwarded to SUMEC a settlement agreement prepared by Appellee's counsel.  SUMEC promptly made inquiries and finally, on August 25, 2021, SINOSURE forwarded a copy of the Default Judgment to SUMEC.  *Id.*  Upon learning of the Default Judgment, on September 3, 2021, SUMEC requested SINOSURE to relay, through B&J, a settlement offer to Appellee.  *Id.*  This is the <u>first time</u> SUMEC authorized B&J directly or indirectly to take actions on its behalf.  *Id.*  Before entry of the Default Judgment, SUMEC categorically denies B&J, Don Leviton and/or Peter Geldes had any "agency" to represent SUMEC.

- "[T]he Bankruptcy Court correctly found that Sumec granted Sinosure authority to file the Claim, which, in turn, granted Brown & Joseph authority to file the Claim on Sumec's behalf."  Ans. Br. at 15.

  <u>Response</u>: This contention ignores the *Trust Deed and Letter of Instruction* which confers on B&J only the right to file the Claim in SINOSURE's or B&J's name.  (A0109).

- "The Bankruptcy Court observed that the Collection Trust Deed's language that Sinosure has the 'full rights for **collection**, on our behalf, against [the Debtors] for the full amount [sought in the proof of claim]' contains 'no reservations in the grant of authority." Ans. Br. at 15 (**emphasis** added).

  <u>Response</u>: This argument is without merit.  The limited authority granted is for **collection**, <u>not</u> accepting service of process.  This is consistent with subrogation.

- "There can be no question that the Bankruptcy Court had much more than an arguable basis for jurisdiction and thus, Sumec failed to meet its burden." Ans. Br. at 14.

  <u>Response</u>: The Bankruptcy Court had no jurisdiction over SUMEC because SUMEC never was served.  (A0083).  Further, it is Appellee's burden to show that SUMEC was served and he failed to do.  *See* Open. Br. at 28-32.  Because Due Process was not met, the Opinion should be reversed and the Default Judgment vacated.

## IV.  THE BANKRUPTCY COURT FAILED TO CONSIDER KEY DOCUMENTS AND ERRONEOUSLY FOUND SUFFICIENT INDICIA OF AGENCY THAT B&J WAS SUMEC'S SUBAGENT.

### A.  The Bankruptcy Court Opinion Ignored the *Subrogation Agreement*.

The Ans. Br. repeatedly refers to B&J as being authorized to file a claim *for SUMEC* and, in fact, filed a claim *for SUMEC*.  Ans. Br. at 5, 15-16.  However, the sworn Gu Decl. states that SUMEC elected not to and did *not* file a proof of claim. (A0078).  This is consistent with the contractual relationship among the parties. SINOSURE, an insurance company, issued trade credit insurance to SUMEC and ultimately paid SUMEC's insurance claim for unpaid trade debt.  (A0075-0076).  In connection with paying SUMEC's insurance claim, SINOSURE became subrogated

to SUMEC's claim as part of loss mitigation.  (A0094).  To effectuate subrogation, SUMEC assigned absolutely all of its rights in and to its claim **to SINOSURE**. Specifically, SUMEC agreed to "**assign, transfer and subrogate to [SINOSURE], to the extent of [SINOSURE's] interest, all [SUMEC's] rights and remedies in and in respect of the subject matter insured**." *Id.* (**emphasis** added).

### B.   The Bankruptcy Court Opinion Ignored a Critical Aspect of the *Trust Deed and Letter of Instruction*.

The Bankruptcy Court found that SUMEC "did nothing to restrict Sinosure from using Sumec's name."  That is a far cry from finding that SUMEC granted SINOSURE authority to accept service of process for SUMEC.  The authority to accept service of process should be by an affirmative grant, not by negative implication.  Furthermore, even though SUMEC authorized SINOSURE to use its name, SINOSURE *did not grant the same authority to B&J*, as evidenced by the *Trust Deed and Letter of Instruction*, which authorized B&J to file the proof of claim only in SINOSURE's or B&J's name, not SUMEC's.  (A0109).  That is consistent with B&J acting as SINSOURE's agent.

By ignoring and misconstruing the *Subrogation Agreement* (A0094) and the *Trust Deed and Letter of Instruction* (A0109)], the Bankruptcy Court came to the impractical and incorrect conclusion that SUMEC hired SINOSURE to file its proof of claim and SINOSURE, in turn, hired B&J as subagent to file that claim *for SUMEC*.  This makes no practical sense.  Certainly, SUMEC could have just directly

filed its own proof of claim. But, as the Gu Decl. makes clear, it did not because its insurance claim was paid. (A0078). The Bankruptcy Court erroneously found "indicia of agency" only by *not* considering the subrogation relationship between SUMEC and SINOSURE, and the restricted authority in the *Trust Deed and Letter of Instruction* that did *not* authorize B&J to file a claim in SUMEC's name. (A0109).

## V. APPELLEE'S COUNSEL'S BELIEF THAT MR. GELDES WAS EITHER SUMEC'S AGENT OR ITS COUNSEL WAS UNREASONABLE.

The Ans. Br. asserts that **Appellee** "communicated frequently with Geldes concerning the Adversary Proceeding, on the **reasonable** belief that Geldes was, in fact, Sumec's agent." Ans. Br. at 6 (**emphasis** added). There is not a scintilla of evidence in admissible form that Geldes actually spoke with anyone at SUMEC before entry of the Default Judgment.[4] Certainly none of his emails copy anyone at SUMEC, and he does not refer to anyone at SUMEC by name. His emails are also clear that when he refers to his **client** he is talking about **SINOSURE**, not SUMEC.

---

[4] Appellee states, "[m]ore than a month later, Geldes—**for the very first time**— purported to disclaim his ability to accept service on Sumec's behalf in writing . . . ." Ans. Br. at 10 (**emphasis** added). There is no affidavit in the record by counsel to support this claim. There is no evidence in writing whereby Geldes affirmatively stated he had such express authority. This position is actually belied by the Geldes Email, which expressly states "I also wanted to **reiterate** that Brown & Joseph is not authorized to accept service on Sumec's behalf. **I believe that was discussed previously, but wanted to re-clarify**") (**emphasis** added). (A0303).

The Gu Decl. denies that SUMEC had any contact with Mr. Geldes before entry of the Default Judgment. The Liu Decl. calls into question the reliability of any email from Mr. Geldes. The Bankruptcy Court reached an incorrect conclusion that B&J was SUMEC's subagent by preventing discovery or testimony at the hearing on the Motion to Vacate.

It is also noteworthy that all of Mr. Geldes' communications were with **Appellee's counsel**; *i.e.,* Appellee is not copied on any email exchange. (A0711-0712). There unfortunately is an unexplained and substantial discrepancy between the Ans. Br., which refers to B&J as SUMEC's agent,[5] and the Weingarten Certification and Declaration of Services filed by Mr. Weingarten, that refer to Mr. Geldes or Mr. Leviton as **SUMEC's actual counsel.** (A0025 and A0016). *See also* Email from Appellee's Counsel Schuyler Carroll that continues to maintain the position that B&J was a law firm representing SUMEC as late as September 2021. (A0312) ([H]aving appeared before Judge Grossman numerous times over his entire term and having practiced with him for nearly 20 years before that, I look forward to your making the argument that service on B&J is not valid because they are not a law firm is great, considering that the email address on this is

---

[5] In fact, the Ans. Brief hedges its bets and now contends either Don Leviton, Peter Geldes and/or B&J is SUMEC's agent. Ans. Br. at 7.

'Lawyer@brownandjoseph.com.'"). To date, attorney Weingarten has not corrected the public record. Either way, whether Appellee's counsel believed Geldes was SUMEC's agent or its attorney, Appellee's counsel's belief was **unreasonable.**

The Bankruptcy Court ruled, "[Peter Geldes] represented several times that he was working with Sumec to review the merits of the litigation … Mr. Geldes also indicated he was in contact with Sumec regarding potential settlement offers." The ruling mistakenly relies on double hearsay (A0711-0712) and, as noted *infra*, conflates two separate and distinct time periods. Again, *before* entry of the Default Judgment, SUMEC had no contact with B&J, including Mr. Geldes. (A0078-0081, A0083). *After* entry of the Default Judgment, SUMEC did work with Mr. Geldes to relay certain settlement offers. Also, Mr. Geldes is a debt collector, not a bankruptcy attorney, and lacks any credentials to review the merits of the litigation.[6] Finally,

---

[6] None of Mr. Geldes' conduct suggested he is SUMEC's attorney, as attorney Noah Weingarten's certified to the Bankruptcy Court (A0025). First, B&J maintains a website that indicates it is a debt collection agency. Second, a phone call or email from Mr. Weingarten to Mr. Geldes would have brought clarity and certainty. Third, Mr. Geldes did not act like a lawyer defending a $693,048.84 preference lawsuit. He never filed a notice of appearance, never requested a stipulation extending SUMEC's time to answer, move or otherwise respond, never aligned with local counsel, and did not attend the status conference conducted on February 8, 2021. Ans. Br. at p. 9. Finally, Mr. Geldes' signature block on his email provides that he is a "Claims & Investigations Manager" for B&J, which is identified as an "Accounts Receivable Management Firm" and "Credit and Collection Specialists." (A1046, A0718-0719).

Appellee's counsel had seven (7) months to confirm Mr. Geldes' correct and authorized role this case.  It is unfathomable that during that time frame Appellee's counsel did not sort this out by an exchange or emails or a phone call.

## VI.   B&J WAS NEVER "EXPLICITLY APPOINTED" TO ACCEPT SERVICE OF PROCESS FOR SUMEC OR EVEN TO FILE A CLAIM FOR SUMEC.

Appellee maintains that "Brown & Joseph had actual and apparent authority to accept service of process on Sumec's behalf because authorized agents named in the proof of claim are deemed 'explicitly appointed' as agents for service of process."  Ans. Br. at 17.  Appellee also claims "The Hague Convention does not govern service of process, because Sumec filed a proof of claim "explicitly" authorizing a U.S.-based agent for service of process."  Ans. Br. at 38.  Appellee's contentions are incorrect as a matter of law.  There is no case that stands for that *per se* proposition.[7]  Although filing a proof of claim submits the claimant to the

_____

[7] The Ans. Br. states:  "**Sumec's claim that Leviton was not Sumec's lawyer is completely irrelevant because non-lawyers may be served with process**.  Bankruptcy Rule 7004(b)(3) provides that service can be made upon an 'officer, a managing or general agent, or to any other agent.' . . .  Sumec's own case law undermines its meritless assertion."  Ans. Br. at 39.  Appellee's argument is misplaced.  SUMEC admits that Mr. Leviton is a lawyer; he is "Legal Counsel" to B&J.  Ans. Br. at 3.  SUMEC's contention, however, is that Leviton is not a titled officer, a lawyer, or decision maker for SUMEC and did not forward any legal process to SUMEC.  (A0777).

Appellee cites to *Advance Watch* and *Fashion TV*.  Both cases support SUMEC's position.  In *Advance Watch*, the complaint was served on the defendant's *actual*

jurisdiction of the Bankruptcy Court for the claims adjudication process, it does not,

absent exceptional circumstances, make the person or entity that filed the claim an

authorized agent for accepting service of process.  The case *Shipley v. Abrams (In re*

*C.P. Hall Co.)*, 513 B.R. 546, 552 (Bankr. N.D. Ill. 2014) (collecting cases) states as

follows:

> In bankruptcy, an attorney's authority to accept service in an
> adversary proceeding can be implied from the level of his
> participation in the underlying bankruptcy case. *Rubin v. Pringle
> (In re Focus Media Inc.)*, 387 F.3d 1077, 1083 (9th Cir. 2004).
> Courts have held repeatedly that an attorney who has actively
> represented a party in the bankruptcy case is implicitly
> authorized to receive service for that party in a related adversary
> proceeding. *See, e.g., id.* at 1084 ("extensively involved");
> *Luedke v. Delta Air Lines*, 159 B.R. 385, 395 (S.D.N.Y. 1993)
> ("active role" (internal quotation omitted)); *Muralo Co. v. All
> Defendants Listed on Exibits A Through D to Complaint (In re
> Muralo Co.)*, 295 B.R. 512, 519 (Bankr. D.N.J. 2003) ("active
> and vigorous representation"); *Beloit Liquidating Tr. v. Beloit
> Walmsley Ltd. (In re Harnischfeger Indus.)*, 288 B.R. 79, 83
> (Bankr. D. Del. 2003) ("active role," "active participation"); *Ms.
> Interpret v. Rawe Druck-und-Veredlungs-GmbH (In re Ms.
> Interpret)*, 222 B.R. 409, 416 (Bankr. S.D.N.Y. 1998) ("active in
> the debtor's bankruptcy"); *Reisman v. First New York Bank (In
> re Reisman)*, 139 B.R. 797, 801 (Bankr. S.D.N.Y. 1992) ("active
> role"). Merely filing an appearance in the bankruptcy case, on

---

secretary; *i.e.*, a titled officer.  *In re Advance Watch Co.*, 587 B.R. 598, 600 (Bankr.
S.D.N.Y. 2018).  In *Fashion TV*, the defendant "unambiguously" stated in its public
SEC filings that CT Corporation System (the alleged agent) is its "agent for service
of process in the United States."  *Fashion Tv Llc v. Telekom Aus. Aktiengesellschaft*,
No. 17-cv-8350 (KBF), 2018 U.S. Dist. LEXIS 244304, at *3 (S.D.N.Y. Mar. 9,
2018).

the other hand, is not enough. *Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 39-40 (E.D.N.Y. 1996).

None of those factors is present in this case. In any event, in all cases cited *supra*, it is undisputed that the plaintiff therein served defendant's *actual* counsel.

Appellee's contention is also incorrect as a matter of fact. Pursuant to the *Trust Deed and Letter of Instruction*, SINOSURE did not authorize B&J to use SUMEC's name to file a proof of claim. (A0109). SUMEC should not be punished with a Default Judgment by reason of a proof of claim mistakenly filed by a debt collection agency that SUMEC never approved or reviewed. (A0078).

This is also incorrect as a practical matter. Creditors file proofs of claim and then may move their business location. That means the address in the proof of claim is stale. Creditors sell their claims in the secondary market and are no longer involved with the case. The persons who sign proofs of claim may get new jobs. That means service on that person on behalf of that creditor-defendant is defective. Because bankruptcy facilitates service of process by allowing service by mail, a modicum of due diligence is mandated to ensure Due Process is satisfied and the summons and complaint is reasonably calculated to reach a decision maker at the targeted defendant. The Court should refrain from endorsing that the filing of a proof of claim explicitly appoints the claimant to accept service of process for an original complaint.

Appellee contends that "Sumec's conduct gave Brown & Joseph full authority to act on Sumec's behalf."  Ans. Br. at 18.   This argument finds no support in the factual record because SUMEC denies any conduct:  before entry of the Default Judgment, SUMEC did not know about B&J and did not authorize B&J to act in any way for SUMEC.  (A0074, A0078-0079, A0083).  Appellee's argument only serves to illustrate why hearsay is inadmissible and the critical importance of a trial court to be a trier of fact.  With hearsay "evidence," there is no opportunity to cross examine the out of court witness and a great opportunity for reaching the wrong conclusion.

It is more accurate to say Appellee unreasonably and incorrectly believed he was interacting with SUMEC and SUMEC never got a chance to challenge that with discovery or in Bankruptcy Court.  Mr. Weingarten apparently also believed Mr. Geldes was SUMEC's counsel.  At least that is what he represented to the Bankruptcy Court.  (A0025).  There is no support for that contention.  And the only support for his contention that Mr. Geldes was SUMEC's agent is double hearsay.  (A0711-0712).  And, as noted, hearsay statements in Geldes' emails are contradicted by the Gu Decl. (A0078-0081, A0083), called into question by Liu Decl. (A0776) and are belied by Mr. Geldes' later email (A0303).

The Ans. Brief contends that "**Sumec's affirmative conduct** granted Brown & Joseph authority to act on Sumec's behalf and **Sumec's failure to act** created an

appearance that Brown & Joseph had authority to act on Sumec's behalf."  Ans. Br. at 19 (**emphasis** added).  Appellee's argument is Kafkaesque. The appellate record is devoid of any evidence in admissible form of affirmative conduct by SUMEC.  To the contrary, SUMEC did not know about the lawsuit or B&J until after entry of the Default Judgment.  (A0080).  SUMEC's "affirmative conduct" is based on double hearsay statements.  SUMEC's "failure to act" results from the fact that SUMEC was never served.

The Ans. Brief argues that "Sumec did not just remain silent concerning Brown & Joseph's agency to act on its behalf.  It actively communicated (even if indirectly) concerning its possible defenses and engaged in back-and-forth on settlement contours." Ans. Br. at 25.  Again, SUMEC's sworn declaration expressly states it did not know about the lawsuit or B&J until *after* entry of the Default Judgment and certainly did not authorize Mr. Geldes to communicate anything to Appellee before then.  (A0080-0081).  Appellee submitted no evidence in admissible form to support its contention that SUMEC was indirectly communicating through Mr. Geldes before entry of the Default Judgment.

## VII.   THE FACTUAL RECORD DOES NOT SUPPORT ENTRY OF THE DEFAULT JUDGMENT.

In addition to challenging service of process and the alleged willful nature of SUMEC's default, SUMEC challenges the *bona fides* of attorney Noah Weingarten in securing a very substantial Default Judgment against SUMEC.  Specifically, the

Weingarten Certification and Declaration of Services relied upon by the Bankruptcy Court in entering the Default Judgment. In the Declaration of Service for the Summons and Complaint, served on Mr. Leviton, Appellee states he served "Defendant and its attorneys." (A0016). In his Declaration of Service for Appellee's Request for Entry of Default, Mr. Weingarten certified to the Bankruptcy Court that Mr. Geldes was "counsel to SUMEC." (A0025). In seeking entry of the Default Judgment, Mr. Weingarten again certified to the Bankruptcy Court that SUMEC itself, *not* by agent, "confirmed receipt of the Summons and Complaint." (A0033). This came *after* Mr. Geldes expressly disclaimed any such authority in writing. None of Weingarten's certifications comports with the appellate record or even the Ans. Br. which takes liberties. The record does not come close to supporting Mr. Weingarten's representations to the Court.

Peter Geldes himself expressly disclaimed in writing to Weingarten that he had any authority to represent or accept service for SUMEC. (A0303). Mr. Weingarten did not disclose this material fact to the Bankruptcy Court either in the Weingarten Certification (A0033)[8] or at the hearing on the Request for entry of Default. (A1091). Appellee should not be rewarded for this conduct.

---

[8] The Weinstein Certification states that "SUMEC confirmed receipt [of the Summons and Complaint]." (A0033).

Appellant urges this Court to reject Appellee's self-serving and overstated conclusion that:

> "Those emails and statements [hearsay statements from Geldes] demonstrate that Sumec was fully aware of the pendency of the Adversary Proceeding.  Sumec deliberately chose to ignore the Complaint, despite the Litigation Administrator's counsel's repeated attempts to get Sumec to answer, as made clear from the emails with Geldes."

Ans. Br. at 46.  The factual record does not support these conclusions reached only because the Bankruptcy Court denied SUMEC any opportunity to take discovery or conduct a fair hearing and relied on double hearsay.

Appellee is basically seeking to benefit from his counsel's mistakes in not seeking to serve SUMEC in China, not confirming the correct role Geldes played in the case, and his fraudulent representations to the Bankruptcy Court to secure the Default Judgement.  This *is* sewer service.  The final straw is Appellee's counsel finger pointing at Geldes.  That Appellee satisfied Due Process because Geldes did not *disclaim* service.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, SUMEC respectfully requests this Court vacate and find the Default Judgment void *ab initio*, reverse the Bankruptcy Court's Opinion and Order, and grant such other relief as is just and proper.

Respectfully submitted,

Dated:  March 15, 2022                    **THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner
Zhao (Ruby) Liu
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com

*Counsel to Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I, Frederick B. Rosner, pursuant to Rule 8015(h), hereby certify that:

1.      The foregoing *Reply Brief by SUMEC Textile Company Limited to Brief for Plaintiff-Appellee* complies with the type-volume limit set forth in Fed. R. Bankr. P. 8015(a)(7)(B)(ii) because, excluding those portions of the document exempted by Fed. R. Bank. P. 8015(g), this document contains 6080 words.

2.      The foregoing *Reply Brief by SUMEC Textile Company Limited to Brief for Plaintiff-Appellee* complies with the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 Times New Roman.

Dated: March 15, 2022                    By: */s/ Frederick B. Rosner*
                                                       Fredrick B. Rosner